FREDERICK M. ELLIS *vs.* MEMBERS OF CIVIL SERVICE COMMISSION.

Suffolk. December 7, 1917. — January 4, 1918.

Present: RUGG, C. J., BRALEY, PIERCE, & CARROLL, JJ.

*Police. Civil Service. Cambridge.*

After the acceptance by a city of St. 1911, c. 468, every member of the police department of that city is subject to the civil service laws and the rules made

thereunder whether he is the head of the police department or an ordinary patrolman.

The adoption by the city of Cambridge of the Plan B form of city government under St. 1915, c. 267, did not repeal nor cancel the effect of the previous acceptance by that city of St. 1911, c. 468, which made the head of the police department of the city subject to the civil service laws.

PETITION, filed on September 29, 1917, for a writ of mandamus addressed to the members of the civil service commission commanding them to authorize the petitioner's appointment as the head of the police department of the city of Cambridge and the payment to him of the salary therefor, and to recognize the petitioner's appointment to that office as being legal and not in violation of the civil service laws and the rules made thereunder.

The case was heard by *Crosby*, J. The petitioner asked the single justice to make the following rulings:

"1. Upon all the evidence and agreed facts the petitioner is entitled to a writ of mandamus as prayed for in his petition.

"2. By virtue of an ordinance of the city of Cambridge, a copy of which ordinance is annexed to the petitioner's petition, creating departments of police and fire in said city, the police department of said city is a principal department of said city and the head of said department designated in said ordinance as 'chief of police department,' is not affected as to his selection or appointment by R. L. c. 19, and acts in amendment thereof and in addition thereto or by any rule or rules made thereunder by the civil service commission. ·

"3. Upon all the evidence and agreed facts the police department of the city of Cambridge is a department of said city and under and by virtue of St. 1915, c. 267, Part III, § 5, the head of such department is appointed by the mayor of said city and such appointee is subject to confirmation by the city council of said city and, therefore, is not affected as to his selection or appointment by R. L. c. 19, and acts in amendment thereof and in addition thereto or by any rule or rules made thereunder by the civil service commission.

"4. Upon all the evidence and agreed facts the petitioner, appointed by the mayor of the city of Cambridge to the office of chief of the police department of the said city, is an officer of the city within the meaning of R. L. c. 19, § 9, and acts in amendment thereof and in addition thereto whose appoint-

ment under and by virtue of the ordinance of said city, a copy of which ordinance is annexed to the petitioner's petition, is subject to confirmation by the said city council, and, therefore, is not affected as to his selection and appointment by said R. L. c. 19, and acts in amendment thereof or in addition thereto or by any rule or rules made thereunder by the civil service commission.

"5. The legal effect of St. 1911, c. 468, being 'An Act to extend the provisions of the civil service act to chiefs of police of certain cities and towns' is to bring the office of chief of police in such cities and towns as have accepted said act under the operation of the civil service laws and the rules made thereunder by the civil service commission to the same degree, effect and extent only, as respects said office, as though said office had not been excepted from the operation of R. L. c. 19, but had been included therein.

"6. The appointment of your petitioner as head of the police department of the city of Cambridge is the appointment of the head of a principal department of said city within the meaning of R. L. c. 19, § 9.

"7. The appointment of your petitioner as head of the police department of the city of Cambridge is the appointment of an officer of said city within the meaning of R. L. c. 19, § 9.

"8. If prior to the enactment of St. 1915, c. 267, the head of a police department of a city, whose appointment, subject to confirmation by the city council of said city, was within the provisions of R. L. c. 19, and acts in amendment thereof or in addition thereto or by any rule or rules made thereunder by the civil service commission, the acceptance and adoption by such city of St. 1915, c. 267, Part III, withdrew said office from the operation of the provisions of R. L. c. 19, and acts in amendment thereof or in addition thereto or by any rule or rules made thereunder by the civil service commission."

The single justice was "of opinion and ruled that by R. L. c. 19, § 9, as amended by St. 1911, c. 468, § 1, the office of chief of a police department is subject to the civil service rules. *Attorney General* v. *Tillinghast*, 203 Mass. 539. *Lattime* v. *Hunt*, 196 Mass. 261. The effect of St. 1911, c. 468, construed in connection with R. L. c. 19, § 9, is to place chiefs of police under civil service the same as other members of the police department, regardless of any exceptions made under R. L. c. 19, § 9. Although generally

under R. L. c. 19, § 9, heads of departments are exempted from civil service, still chiefs of police by St. 1911, c. 468, § 1, are expressly made subject thereto. The fact that the appointment of a chief of police must be confirmed by the city council does not exempt the office from the civil service rules, because by the express terms of St. 1911, c. 468, § 1, such office is subject to the rules of the civil service."

The justice ruled that the petition could not be maintained, and accordingly refused to make the rulings requested by the petitioner "because unsound in law or immaterial in view of the foregoing rulings." He made an order that the petition for a writ of mandamus be denied; and the petitioner alleged exceptions.

*H. F. R. Dolan,* for the petitioner.

*W. H. Hitchcock,* Assistant Attorney General, for the respondents.

PIERCE, J. This is a petition for a writ of mandamus, brought in the Supreme Judicial Court for the county of Suffolk under R. L. c. 19, § 34, as amended by St. 1910, c. 359, to compel the respondents, as they are civil service commissioners for the Commonwealth, to authorize the appointment of the petitioner as head of the police department of the city of Cambridge and the payment of compensation therefor, and to recognize the appointment of the petitioner to said office as legal and not in violation of the civil service laws or any rule or rules made thereunder.

The first contention of the petitioner is that police commissioners, chiefs, marshals, and chiefs of police departments, by the terms of the act are exempt from civil service rules by express enumeration if not otherwise excluded by reason of their election to office by the people, by a city council or by an appointment which is subject to confirmation by the executive council or city council of any city.

An examination of the St. of 1884, c. 320, § 15, and a comparison of the order of its clauses with their arrangement as reenacted in R. L. c. 19, § 9, make it plain that the Legislature intended that the civil service rules should apply to all members of the police department below the rank of commissioner, superintendent, marshal, or chief, regardless of the manner of their election, appointment and confirmation. It also is manifest that the heads of the police departments, whatever be their title,

were excepted from the civil service laws and rules which applied to all other members of the police department by the statutory limitation and definition of the words "members of" as used in the act, and not by reason of the dignity and title of any office or of the manner of election or induction to office. The effect of the acceptance of St. 1911, c. 468, by the city of Cambridge upon St. 1884, c. 320, § 15, R. L. c. 19, § 9, was that the statute thereafter read (as if originally enacted without limitation or restriction), "such rules shall apply to members of police and fire departments." So read the terms of the act make every member of the police department subject to the laws and rules of the civil service whether he be the head of the police department (a principal department) or an ordinary patrolman.

It is further contended that the St. of 1911, c. 468, so far as concerned the city of Cambridge, was repealed by implication by the adoption of a new charter, Plan B under St. 1915, c. 267, which among other provisions provides in Part III, § 6, relative to the removal of heads of departments and officers of municipal boards, as follows:

"The mayor may, with the approval of a majority of the members of the city council, remove any head of a department or member of a board before the expiration of his term of office, except members of the school committee, officials appointed by the Governor, and assessors where they are elected by vote of the people. The person so removed shall receive a copy of the reasons for his removal, and he may, if he desires, contest the same before the city council. He shall have the right to be represented by counsel at such hearing."

At the time of the adoption of the charter there was a department of the city known as the department of public safety, established under St. 1912, c. 611, and this department was a consolidation of the police and fire departments existing at the date of the passage of St. 1912, c. 611. On May 22, 1917, the city council duly passed an ordinance approved by the mayor abolishing the department of public safety and establishing a fire department and police department. It provides:

"Section 4. The police department shall be under the charge of a chief of police department who shall be the head of said department.

"Section 5. The said head of said departments shall be appointed by the mayor, subject to confirmation by the city council, for an indefinite period and the mayor may, at any time, with the approval of the city council, remove said heads of said departments or either of them, in accordance with the provisions of the city charter."

The St. of 1911, c. 468, was not expressly repealed by St. 1915, c. 267, and its provisions relating to the appointments and removals are not so inconsistent or unworkable as to involve either a surrender of granted municipal powers or an abatement or modification of any essential provision of St. 1904, c. 314, and St. 1906, c. 210.

In the matter of appointments the authority of the mayor is limited only in that his selection of the appointee must be made from a list of competent persons certified to him by the civil service commission. In the matter of removals under the civil service rules, formal charges must be preferred and an opportunity given for a public hearing. *Tucker* v. *Boston*, 223 Mass. 478. Under the charter the person removed "shall receive a copy of the reasons for his removal" and has a right to a hearing thereon, and by counsel to contest the same, before the city council. Before removal, under the civil service law or under the charter, the person sought to be removed shall receive a copy of the reasons for his removal, and shall, if he desires, be given a hearing before the city council. St. 1904, c. 314. St. 1915, c. 267, Part III, § 6.

The right of appeal to a District Court under St. 1911, c. 624, is not irreconcilable with the procedure of hearings upon charges before the city council sitting as a trial board under St. 1915, c. 267, Part III, § 6.

*Exceptions overruled.*