WEYMAN S. CROCKER & others *vs.* LOUIS N. M.
DESCHENES & others.

Worcester.    March 8, 1934. — June 27, 1934.

Present:· CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Municipal Corporations,* Officers and agents.    *Public Officer.    Intoxicating
Liquor.    Words,* "Municipal," "Municipal boards."

The licensing board appointed under G. L. (Ter. Ed.) c. 138, § 4, in a
city having the Plan B form of government is not a "municipal board"
and the appointment of its members by the mayor is not subject to
the requirement of confirmation by the city council specified in G. L.
(Ter. Ed.) c. 43, § 60.

PETITION, filed in the Supreme Judicial Court for the
county of Worcester on February 14, 1934, and afterwards
amended, for a writ of mandamus.

The case was reported by *Pierce,* J., for determination
by the full court.

*S. M. Salny,* for the petitioners.

*C. B. Rugg,* (*W. F. Farr & R. Ely* with him,) for the re-
spondents.

CROSBY, J.    This is a petition for mandamus brought to
determine the title to office of the licensing board of the
city of Fitchburg as between the petitioners and the re-
spondents.    The case was reported by a single justice of
this court upon the pleadings for the determination of the
full court.

The facts alleged in the petition are as follows:    On
April 3, 1933, Joseph N. Carriere, the mayor of Fitchburg
for the years 1932 and 1933, appointed the respondents as
members of the licensing board of the city of Fitchburg
under the provisions of G. L. c. 138.    They have purported
to function in such capacity up to the present time.    These
appointments were not submitted to or confirmed by the
city council.    There was no licensing board appointed
under G. L. c. 138, § 4, or corresponding previous law, or

under the city charter, for several years prior to April 3, 1933, although there was a licensing board functioning through the year 1925. On December 2, 1924, the city at an annual election had voted to authorize the granting of licenses for the sale of certain nonintoxicating beverages in accordance with the provisions of law relative thereto. On June 13, 1933, at a special election the voters of the city voted in favor of permitting the granting of licenses for the sale of wines and malt beverages, the vote having been held in accordance with the provisions of St. 1933, c. 120, §§ 18 and 19. Prior to the taking of that vote there had not been any vote since December 2, 1924, on the question whether or not licenses should be granted for the sale of certain nonintoxicating beverages. On December 9, 1933, the mayor, Joseph N. Carriere, filed with the city clerk an order, in the form required by St. 1933, c. 373, § 2, authorizing the granting of licenses for the sale of intoxicating beverages, and the sale of such beverages in the city of Fitchburg.

At the regular municipal election held on November 8, 1933, Robert E. Greenwood was elected mayor of the city. He assumed the duties of office on January 2, 1934. In his capacity as mayor under date of January 2, 1934, he notified the respondents to desist and refrain from granting any further licenses, or from acting or purporting to act as the licensing board of the city. On the same date he appointed the petitioners as members of the licensing board. These appointments were rejected by the city council on January 16, 1934. On February 6, 1934, he resubmitted the appointments and they were confirmed on that date. On February 7, 1934, the petitioners purported to qualify as members of the licensing board of the city by taking the oath of office, and they have purported to function in such capacity up to the present time. The petitioners and the respondents were duly qualified for appointment in so far as the provisions of G. L. (Ter. Ed.) c. 138, § 4, are concerned. The city of Fitchburg operates under Plan B form of government specified in G. L. (Ter. Ed.) c. 43, §§ 1–45, inclusive, and §§ 56–63, inclusive. Prior to the adoption

of the present charter which was accepted at the regular State election held on November 7, 1916, the city operated under a special charter, St. 1872, c. 81.

The only question here presented is whether the appointment of a licensing board by the mayor requires for its validity the confirmation of the city council. G. L. (Ter. Ed.) c. 138, § 4, provides in part: "In each city which is not exempt by the provisions of section ten there shall be a licensing board appointed by the mayor, consisting of three persons, who shall not be engaged, directly or indirectly, in the manufacture or sale of intoxicating liquors or of certain non-intoxicating beverages, who have been residents of the city in which they are appointed for at least two years immediately preceding their appointment, and who shall not hold any other public office except that of notary public and justice of the peace . . . ." Section 10 provides: "The following cities shall be exempt from the operation of the six preceding sections: First, Cities having a licensing board created by special statute or under the provisions of a charter. Second, Cities which have not at any annual city election before this chapter takes effect voted to authorize the granting of licenses for the sale of certain non-intoxicating beverages; but if any such city hereafter, at an annual city election, votes to authorize the granting of such licenses, a board shall, thereupon, in the February following, be appointed for such city as above provided, and the provisions of the six preceding sections shall thereafter apply to said city." G. L. (Ter. Ed.) c. 43, § 60, provides, in part: "Upon the adoption of Plan B, all heads of departments and members of municipal boards, except the school committee, officials appointed by the governor, and assessors if elected by the people, as their terms of office expire, shall be appointed by the mayor, subject to confirmation by the city council; but the city solicitor shall be appointed, and may be removed, by the mayor, without confirmation by the city council." G. L. (Ter. Ed.) c. 43, § 11, provides, in part, "If a majority of the total number of votes cast at a regular state election for and against the adoption of one of the plans of gov-

ernment provided for in this chapter shall be in favor of
its adoption, this chapter, so far as applicable to the form
of government under the plan adopted by the city, shall
supersede the provisions of its charter and of the general
and special laws relating thereto and inconsistent here-
with . . . ."

It is the contention of the respondents that they were
appointed by the mayor of the city under G. L. (Ter. Ed.)
c. 138, § 4; that that section contains no provision requir-
ing confirmation of appointments by a city council; and
that a licensing board appointed under G. L. (Ter. Ed.)
c. 138, § 4, is not a "municipal board" within the mean-
ing of § 60 of the charter of the city of Fitchburg so that
confirmation by the city council of appointments by the
mayor to that board is required. The petitioners, on the
other hand, contend that a licensing board is a "municipal
board" within the meaning of G. L. (Ter. Ed.) c. 43, § 60,
and that the appointment of a licensing board under G. L.
(Ter. Ed.) c. 138, § 4, requires confirmation in cities op-
erating under a Plan B charter.

Originally, under our statutes, confirmation by the city
council of appointments made by the mayor to the li-
censing board was required. St. 1875, c. 99, § 4, gave
authority to the mayor and aldermen of cities or the se-
lectmen of towns to grant licenses for the sale of intoxi-
cating liquor. By § 20 of that act the powers and duties
given to, and imposed upon, the mayor and aldermen of
cities by § 4 may be exercised in any city by a board of
license commissioners, if the city council should so de-
termine, such board to consist of three inhabitants of the
city "to be appointed by the mayor and confirmed by
the city council thereof . . . ." Likewise under Pub. Sts.
c. 100, § 28, the powers given to and imposed upon the
mayor and aldermen of cities by § 5 might, in any city
except Boston, be exercised by a board of license com-
missioners, if the city council so determined, such board to
consist of three inhabitants of the city "to be appointed by
the mayor and confirmed by the city council thereof . . . ."
This requirement of confirmation was omitted in St. 1894,

c. 428, which provided in § 1, in part, that "In each city of the Commonwealth, except the cities exempted by the provisions of section ten of this act, there shall be a board of license commissioners, to be appointed by the mayor of such city. Each such board shall consist of three persons, who shall have been residents of the city in which they are appointed for at least two years immediately preceding such appointment, and who shall not be engaged directly or indirectly in the manufacture or sale of intoxicating liquors, and who shall not hold any other public office." Section 4 provides, in part, that such boards shall exercise the powers and perform the duties given to and imposed upon the mayor and aldermen of cities by c. 100 of the Public Statutes. Section 10 excepts from the operation of the act, first, all cities in which there is a license commission or board of police created by special statute or under the provisions of a charter; and second, all cities which at their last annual municipal election prior to the passage of the act did not vote to authorize the granting of licenses for the sale of intoxicating liquors, but provided that if any such city at any subsequent annual municipal election voted to authorize the granting of such licenses, a board should be appointed as therein provided. The requirement of confirmation existing before St. 1894, c. 428, and omitted in that act, has not since been revived by subsequent legislation dealing with the question. R. L. c. 100, § 3. G. L. c. 138, § 4. St. 1933, c. 376, § 4. The fact that confirmation was required prior to St. 1894, c. 428, and no such requirement appears in that or in subsequent corresponding enactments shows a plain legislative intent to dispense with the requirement. In St. 1933, c. 120, § 3, repealed by St. 1933, c. 376, local licensing authorities are defined as "the licensing boards and commissions established in any city or town under special statute or city charter, or under section four of chapter one hundred and thirty-eight of the General Laws, or corresponding provisions of earlier laws, or, in a city having no such board or commission, a board appointed by the mayor without confirmation by the aldermen and in accordance with

the provisions of said section four, or in default of such appointment, the aldermen, or, in a town having no such board or commission, the selectmen . . . ." See now St. 1933, c. 376, § 1. The provision that in a city having no such board or commission, as set forth, appointments are to be made "by the mayor without confirmation by the aldermen and in accordance with the provisions of said section four" has the effect to bring these appointments in harmony with appointments made under G. L. (Ter. Ed.) c. 138, § 4, and the corresponding provisions of earlier laws, namely, made without confirmation by the aldermen.

The precise contention of the petitioners is that a licensing board is a municipal board within the meaning of G. L. (Ter. Ed.) c. 43, § 60, that the provisions thereunder requiring confirmation of appointments to a municipal board are inconsistent with the provisions of G. L. (Ter. Ed.) c. 138, § 4, and therefore control by virtue of G. L. (Ter. Ed.) c. 43, § 11. This contention cannot be adopted. It is clear that a licensing board is not a municipal board. This is apparent from numerous cases decided by this court. In *Cook* v. *Springfield*, 184 Mass. 247, the court, in holding that a license commissioner of the city of Springfield appointed under St. 1894, c. 428, was entitled to no other compensation than that fixed by the city council in accordance with the provisions of St. 1894, c. 428, said at pages 248–249: "What this court said of assessors in *Walker* v. *Cook*, 129 Mass. 577, 578, is true of license commissioners. In that case Endicott, J., said: 'The assessors, therefore, are public officers, in the performance of whose duties the whole community has an interest. Towns have no authority to direct or control them, but all their powers and duties are prescribed and regulated by statute; and, in case they do not perform their duties, the town has no remedy against them. They are not, in any sense, the agents or servants of the town, and the town, by the election of assessors, enters into no contract with them for the payment of their services.'" In *McGinnis* v. *Medway*, 176 Mass. 67, it was said at page 68: "Although the question whether licenses shall be granted in any city or town is determined by the vote of the inhabitants thereof, still the

licensing board, whether a special commission, or the mayor and aldermen or the selectmen, do not act as the agents of the city or town, but as public officers specially designated in that behalf, and, in the absence of any statute to the contrary, the city or town is not answerable for their acts as such officers. The license is not granted by the city or town, but by the State acting through its duly appointed officers." And in *Brown* v. *Nahant*, 213 Mass. 271, it was said at page 274: "The licenses were not granted to him by the town of Nahant or in any sense by its authority. They could have been granted only by the selectmen of the town. These selectmen, in passing upon his applications and granting him licenses, acted merely as public officers under the authority of the Commonwealth, and the moneys which he paid as license fees were not really paid to the town, but to the treasurer of the town, likewise acting as a public officer and not as an agent of the town." See also *Dunn* v. *Framingham*, 132 Mass. 436, 438. In *Commonwealth* v. *Nickerson*, 236 Mass. 281, relied on by the petitioners, holding that the statutes of the Commonwealth relative to the business of the manufacture and sale of intoxicating beverages were not rendered inoperative by the adoption of the Eighteenth Amendment and the Volstead act, this court said at page 305: "The general purpose of R. L. c. 100, is prohibition, except as local option manifested by annual votes in the several municipalities effectuated by the granting of licenses through municipal boards may result in a regulated method of sales by licensees." The words "municipal boards" in this sentence cannot be taken, and were not intended, to overthrow and make a nullity of the established rule of law that a licensing board is not the agent of a municipality and not subject to its control. As stated in the brief of the respondents, the word "municipal" as used in that sentence refers to the geographical limits of the authority of the several municipalities rather than the political nature of their duties. In *Trustees of the Boston Public Library* v. *Rector of Trinity Church*, 263 Mass. 173, also cited by the petitioners, it was held that the words "department expenses" used in the will of Josiah H. Benton included expenses of the

licensing board of the city of Boston, but that decision, turning upon the meaning to be given to the word "department" as used by the testator in the twelfth clause of his will, is not an authority as to the status of licensing boards, or of assistance in interpreting the provisions of a city charter.

As it is a well established principle of the common law that members of a licensing board are public officers and not agents of a municipality and subject to its control, it is manifest that the words "municipal boards" in St. 1915, c. 267, Part III, § 5, now G. L. (Ter. Ed.) c. 43, § 60, were not intended to include licensing boards appointed under the provisions of G. L. (Ter. Ed.) c. 138, § 4. There is, therefore, no inconsistency, and since the provisions of G. L. (Ter. Ed.) c. 138, § 4, are neither inconsistent with the provisions of a Plan B city charter, nor unworkable therewith, they must still be considered in force and operative in a city which has adopted such a charter. *Ellis* v. *Civil Service Commission*, 229 Mass. 147.

That the provisions of a Plan B charter have no application to licensing authorities appointed under G. L. (Ter. Ed.) c. 138, § 4, finds support in *McMinn* v. *Mayor of Cambridge*, 225 Mass. 104, which held that the provisions in a Plan B charter, St. 1915, c. 267, Part III, § 8, now G. L. (Ter. Ed.) c. 43, § 63, conferring the veto power upon the mayor have no application to the licensing authorities appointed under G. L. (Ter. Ed.) c. 138, § 4. In holding that the provisions of the charter had no application to action taken by the city council in such capacity it was said by this court at page 106: "The veto power given by St. 1915, c. 267, Part III, § 8, is in these words: 'Every order, ordinance, resolution and vote relative to the affairs of the city, adopted or passed by the city council, shall be presented to the mayor for his approval.' An order voting a license of the sixth class to an apothecary is an order made by the city council as a licensing board and is no more subject to the veto power of the mayor than is a similar order made by the licensing board itself in cities which vote for license." The reason is plain. In enacting G. L. (Ter. Ed.) c. 43, the Legislature was considering

municipal government and its forms, and not problems in any way associated with intoxicating beverages. G. L. (Ter. Ed.) c. 138 was intended to cover the entire field relating to liquor completely and exclusively. G. L. (Ter. Ed.) c. 43 was intended to provide for the ordinary and normal functions of municipal government, and was equally exclusive in its own field. The two acts are mutually exclusive.

The city at its annual election on December 2, 1924, voted to authorize the granting of licenses for the sale of certain nonintoxicating beverages. The provisions of G. L. (Ter. Ed.) c. 138, § 4, requiring the appointment by the mayor of a licensing board was operative when a board was appointed by the mayor on April 3, 1933, and functioned through the year. The city having once voted to grant licenses for the sale of nonintoxicating beverages, the mayor under the provisions of § 4 of c. 138 had full authority to make appointments to the licensing board. As that section does not require confirmation of such appointments, the appointment of the respondents on April 3, 1933, under the statute was therefore not invalid because not confirmed by the city council.

*Petition for writ of mandamus dismissed.*