JEREMIAH J. BRADLEY *vs.* CITY OF MARLBOROUGH.

GEORGE F. BOND *vs.* SAME.

Middlesex.    December 7, 8, 1936. — December 28, 1936.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Public Officer. Municipal Corporations*, Officers and agents, Liability for tort, Drainage. *Marlborough.*

By the original charter of the city of Marlborough, St. 1890, c. 320, § 26, as amended by St. 1893, c. 322, and by G. L. c. 41, § 68, the superintendent of streets was a public officer, whose status was not changed by the city's later adoption of a plan B form of charter under G. L. c. 43 and St. 1922, c. 275, and the city was not liable for damage resulting from a defective plan of a part of its drainage system built by him; and it was immaterial that the city paid men employed under his supervision to do a part of the work.

TWO ACTIONS OF TORT.    Writs in the Superior Court dated September 5, 1928.

The actions were tried together before *Swift*, J.    There were verdicts for the plaintiffs, respectively, in the sums of $3,100 and $1,050.    The defendant alleged exceptions.

*F. L. Williams*, City Solicitor, (*E. T. Simoneau* with him,) for the defendant.

*J. H. McDonough*, (*J. E. Rice & L. H. Bigelow* with him,) for the plaintiffs.

PIERCE, J.    These are two independent actions of tort, tried to a jury upon the same statement of facts.    Each plaintiff seeks to recover for property damage resulting from the alleged negligence of the defendant in failing properly to construct or properly to maintain an old culvert, built by the defendant under Liberty Street, a public way in the defendant city, by reason of which negligence the plaintiffs suffered damage from water which entered upon their re-

spective properties and injured their goods and merchandise. In each action the defendant's answer was a general denial, and, in the Bond case, contributory negligence which is now waived by the defendant.

At the close of the evidence the defendant filed in each action a motion for a directed verdict for the reasons: "1. That upon all the evidence and the pleadings in the case the plaintiff is not entitled to recover." "3. That there is not sufficient evidence in the case that the defendant was negligent. 4. That the superintendent of streets of the city of Marlborough in constructing the reinforced concrete culvert from Windsor Street, easterly and into Liberty Street, and connecting said reinforced concrete culvert with the rubble stone culvert under Liberty Street acted as a surveyor of highways of the city of Marlborough. 5. That the superintendent of streets of the city of Marlborough in constructing the twenty-four inch vitrified clay pipe drain extending from a point in front of the Windsor Hotel on Main Street in Marlborough in an easterly direction on Main Street to Windsor Street and then southerly on Windsor Street into the drain on Windsor Street acted as the surveyor of highways of the city of Marlborough. 6. That the surveyor of highways of the city of Marlborough is a public officer and the said city is not responsible for his acts. 7. That there is no evidence that any act done in the summer of 1927 in connection with the surface water drain on Windsor Street and Liberty Street was done by an agent of the city of Marlborough. 8. That there is no evidence that any act done in connection with the surface water drain on Windsor Street and Liberty Street, at any time prior to the summer of 1927, was done by an agent of the city of Marlborough." These motions were denied and the defendant duly excepted.

In each action the defendant requested, and now relies upon, twenty-two rulings, which were similar to the grounds for the motions above quoted, numbered 1, 3, 4, 5 and 8, and were all based upon the theory that, either in fact or in law, the superintendent of streets, at and before the time the damage was sustained by the plaintiffs, was acting, not

in his capacity as an appointed officer of the defendant and as agent of the defendant, but as a surveyor of highways of the defendant under legislative mandate. These requests for rulings were severally denied by the judge and in each case the defendant duly excepted.

The cases were given to the jury on counts 3 and 4 of the plaintiffs' declarations, in each case the plaintiff waiving counts 1 and 2. The judge submitted two questions to the jury: (1) "Was the culvert under Liberty Street in the condition you find it was on November 3rd and 4th, 1927, negligently constructed or negligently maintained by the defendant?"; and (2) "Did the construction or the maintenance of the culvert under Liberty Street cause the water to collect in the Bond and Bradley cellars on November 3rd and 4th, 1927?" The jury answered "Yes" to each question and returned a verdict for the plaintiff in each action.

All the evidence material to the issues here presented is contained in the bill of exceptions, and is in substance as follows: The city of Marlborough was incorporated by St. 1890, c. 320, and now operates under that statute as modified by St. 1893, c. 322, and under G. L. c. 43, plan B, as modified by St. 1922, c. 275. Main Street runs east and west. Windsor Street lies on the southerly side of Main Street and runs in a southeasterly direction. Liberty Street begins at Main Street at a point easterly of Windsor Street, and extends southerly therefrom. The two streets converge at a point opposite the premises of one Lucier, as shown on a plan attached to the bill of exceptions. The plaintiff Bradley occupied premises at the corner of Windsor and Main streets, the building thereon fronting on Main Street. The plaintiff Bond occupied premises at the corner of Liberty and Main streets, the buildings thereon facing Main Street, the rear of the buildings being next to the rear of the building occupied by Bradley. In the record there are no facts admitted or any testimony which shows when or under what authority Main, Windsor or Liberty Street was laid out or constructed. The plan attached to the bill of exceptions discloses that at the time of the trial

of these actions in 1936 (the flooding was in 1927) a culvert crossed Windsor Street from west to east near and in the rear of the Bradley premises. This culvert carried water received from various pipes and conduits, and from two small natural brooks which ran from points northwesterly and southwesterly and joined in Windsor Street west of the said culvert. The water which these brooks discharged into the culvert at Windsor Street was a mixture of natural, surface and sewer water. The water from the culvert at Windsor Street discharged into a small open brook, entered a culvert under Liberty Street, and thence passed toward Southborough.

There was undisputed evidence that from 1922 until 1930 one Coyne was city engineer and superintendent of streets of the city of Marlborough, and was in charge of construction; and that said Coyne, in the summer of 1927, designed and constructed a reinforced concrete culvert, about four and one half feet high and three and one half feet wide, which ran, in place of the open brook, from the Windsor Street culvert, back of the Bradley and Bond premises fifty-three feet to the west end of the culvert under Liberty Street. The plaintiffs make no claim in the pleadings or evidence that the reinforced concrete culvert between Windsor and Liberty streets was improperly constructed, but contend that the introduction of the square cement system back of Bond's premises, a loop around Main Street, and the piping of Artemas Ward Park had increased the velocity of the water over what it was when there was an open brook; that the increased velocity of the water introduced under Liberty Street would have a tendency to pound the walls of the culvert harder than when there was an open brook; and that that was why Coyne, in the summer of 1927, smoothed off and pointed up with plaster both sides of the culvert under Liberty Street, from the westerly end clear through the culvert to the beginning of another concrete culvert shown on the plan.

It appeared in evidence that Coyne, in doing this work back of the plaintiffs' premises, in putting in the fifty-three foot cement, square culvert, and in pointing up the culvert

under Liberty Street, was not directed by the mayor, or by any other official, to do this work, although the mayor knew of it and did not direct Coyne to stop. It was also in evidence that Coyne picked out the culvert to be built that year (1927) in order to make a general drainage system, and to make things generally safer in and around the locality, as he considered the "open ditch between two closed-in culverts" "an eyesore and dangerous." There was further evidence that the reason Coyne constructed the culvert was "To make Windsor Street and Liberty Street and those streets around there safer, remove that guard rail [at Windsor and Liberty streets], for one thing, and to clean up what . . . [he] considered an eyesore."

It appeared in evidence that on November 3, 1927, at about five or six o'clock in the evening it began to rain, and rained spasmodically during the evening; that then it rained hard; and that then for periods of fifteen or twenty minutes there would be downpours of rain, then an apparent lull when it was still raining hard, and then another downpour. The last of these occurred between ten o'clock at night and about three o'clock in the morning. The precipitation was excessive. Water came from manholes and out of a hole or washout in Liberty Street, and went into the cellars of the plaintiffs.

Considering the entire evidence, it cannot be ruled that Coyne was not negligent in the designing of the reinforced cement culvert, or in not ascertaining, while constructing the reinforced concrete culvert in place of the open brook, the condition of the Liberty Street culvert, in view of the possible effect upon its walls of the velocity of the water of the reinforced concrete culvert as planned. If Coyne was acting as agent for the defendant in constructing the reinforced concrete culvert, or in undertaking to strengthen the walls of the Liberty Street culvert to withstand the velocity of the water which should come against these walls from the reinforced concrete culvert, the question of his negligence and that of the negligence of the defendant were for the jury. On the other hand, if Coyne, in such connection, was acting as a highway surveyor, that is, as a public

officer, the plaintiffs had no cause of action against the defendant, even if there was an obvious, causal connection between the negligent acts of Coyne and the damage sustained by both plaintiffs or by one of them.  Setting to one side the question of the admissibility of certain testimony, it is obvious that the sole issues on the defendant's motion in each case for a directed verdict are (1) Was Coyne a surveyor of highways of the defendant, and (2) Assuming that he held such a public office, did he construct the reinforced concrete culvert and do the things he did do or failed to do in pursuance of a plan "to make a general drainage system and make things generally safer in and around the locality."

The statutes applicable to the issues are (1) G. L. c. 43, § 5, which reads: "Until superseded under this chapter, the organization of the executive and administrative departments, and the powers and duties of the officers and employees of any city adopting any of the plans provided for in this chapter, and the fiscal year of such city shall remain as constituted at the time of the adoption of such plan; but the city council or other legislative body may at any time by ordinance, consistent with general laws, reorganize, consolidate or abolish departments, in whole or in part; transfer the duties, powers and appropriations of one department to another, in whole or in part; establish new departments; and increase, reduce, establish or abolish salaries of heads of departments or members of boards.  This section shall not authorize any action in conflict with chapter thirty-one."  (2) St. 1890, c. 320, § 26, as amended by St. 1893, c. 322: ". . . Section 26.  The mayor shall appoint annually in the month of January, subject to the confirmation or rejection of the board of aldermen, a superintendent of streets, who shall hold office for one year from the first Monday of February in the year in which he shall be appointed and until his successor is appointed and qualified, unless sooner removed.  He shall be removable by the mayor, with the consent of the board of aldermen, and a vacancy may be filled at any time by the mayor and alder-

men for the unexpired term. . . . Said superintendent shall in general, except as otherwise herein provided, have exclusively the powers and be subject to the duties, liabilities and penalties which are by law given to or imposed upon road commissioners of towns." (3) G. L. c. 41, § 68: "The superintendent of streets shall, under the direction of the selectmen, have full charge of all repairs and labor upon public ways and sidewalks, and, if no other provision is made, of repairs upon sewers and drains; and in relation to such matters he shall have the powers, perform the duties and be subject to the liabilities and penalties of surveyors of highways and road commissioners." (4) St. 1922, c. 275, whereby the city of Marlborough was permitted to adopt the plan B form of government. G. L. c. 43. This plan contains no specific provision as to the appointment and measure of duties of the superintendent of streets. Therefore St. 1922, c. 275, did not repeal nor cancel the effects of the previous acceptance by the defendant of St. 1893, c. 322. *Ellis* v. *Civil Service Commission*, 229 Mass. 147. *McLaughlin* v. *Mayor of Cambridge*, 253 Mass. 193. It follows that Coyne, as a matter of law, was superintendent of streets, road commissioner and surveyor of highways. It further follows that the defendant was not liable for any defect in the surveyor's plan to make a general drainage system, which included the premises owned or occupied by the plaintiffs. The fact that the defendant paid the men employed, under the supervision of the superintendent of streets, to rebuild the cement box culvert in the rear of the plaintiffs' properties does not create the relationship of master and servant between the superintendent and the defendant, or between the superintendent and the employees. *Malinoski* v. *North Adams*, 283 Mass. 1. *Johnson* v. *Somerville*, 195 Mass. 370, 378. *McManus* v. *Weston*, 164 Mass. 263.

The motions of the defendant for directed verdicts, based upon undisputed evidence that, as a matter of law, the superintendent of streets was acting, not in his capacity as an appointed officer and as agent of the defendant, but as a surveyor of highways or as a road commissioner under

legislative authority, should have been granted.  The exceptions of the defendant to the refusal to grant its motions for directed verdicts are sustained, and in each case judgment is to be entered for the defendant.

*So ordered.*