LEWIS A. FURLONG *vs.* ELIZABETH AYERS & others.

Essex.    October 5, 1939. — March 26, 1940.

Present: FIELD, C.J., LUMMUS, QUA, & COX, JJ.

*Municipal Corporations,* Officers and agents. *Department of Public Welfare. Mandamus.*

Section 10 of G. L. (Ter. Ed.) c. 118A as enacted by St. 1936, c. 436,
did not give the State department of public welfare power to make
a rule, regulating the personnel of the bureaus of old age assistance
required by § 2 and providing that in a city or town assisting one
hundred persons or more "a supervisor of old age assistance should
be appointed by the bureau," and therefore such a rule must be dis-
regarded in determining the validity of the appointment or removal
of such a supervisor.

A petition for a writ of mandamus directing restoration of the petitioner
to an office from which he alleged he had been illegally removed can-
not be maintained if it appears that the petitioner's original appoint-
ment to the office was void.

An ordinance of a city operating under a Plan B form of charter, which
purported to substitute for a local board of public welfare required
by G. L. (Ter. Ed.) c. 41, § 1, a single relief commissioner, was not
"consistent with general laws" and therefore was not within the
power to reorganize departments given by c. 43, § 5, and was void;
and an appointment made by one purporting to act as such a relief
commissioner was of no effect.

PETITION, filed in the Supreme Judicial Court for the
county of Essex on July 18, 1938.

The case was heard by *Dolan,* J., who ordered the petition
dismissed. The petitioner alleged exceptions.

*M. A. Cregg,* (*D. P. French* with him,) for the petitioner.
*T. S. Murray,* for the respondents.

LUMMUS, J.   This is a petition for a writ of mandamus
to try the title of the petitioner to the office of supervisor
of old age assistance in the city of Newburyport, which is

claimed by the respondent Elizabeth Ayers. *Ferrante* v. *Higgiston*, 296 Mass. 208.

St. 1936, c. 436, struck out G. L. (Ter. Ed.) c. 118A, and substituted a new chapter bearing the same number. Section 2 of the new chapter provided that "each [local] board of public welfare shall, for the purpose of granting adequate assistance and service to . . . aged persons, establish a division thereof to be designated as the bureau of old age assistance." On September 1, 1936, the department of public welfare of the Commonwealth, having power under § 10 of the new chapter to "supervise the work done and measures taken by the boards of public welfare of the several towns in respect to persons assisted and service given under this chapter" and for that purpose to "make such rules relative to notice and reimbursement, and such other rules relating to the administration of this chapter, as it deems necessary," adopted a rule purporting to require that a bureau of old age assistance shall consist of three persons, one of whom shall be a citizen other than a selectman or member of the board of public welfare, and that in a city or town assisting one hundred persons or more "a supervisor of old age assistance should be appointed by the bureau, who shall act as the executive officer of the bureau."

We think that the Attorney General was right in expressing the opinion on April 13, 1937 (Report of the Attorney General for 1937, page 88) that the rule went beyond the rule-making power given by the statute. The Legislature, in our opinion, did not intend that the department should prescribe minimum requirements for the organization of bureaus of old age assistance, the establishment of which had been entrusted to the local boards of public welfare.

When, on October 26, 1937, the petitioner was appointed supervisor of old age assistance in Newburyport, any lawful power to appoint him had to be derived from the authority given by § 2 of the new chapter 118A to establish a division of the local board of public welfare to be designated as the bureau of old age assistance. The rule must be disregarded. Since the local board of public welfare under that statute was the appointing authority, by implication it was the

removing authority also. *Adie* v. *Mayor of Holyoke*, 303 Mass. 295, 301. The removal of the petitioner on April 20, 1938, by the bureau of old age assistance, was not within the powers of the bureau. It is true, that the single justice found that his removal was "with the approval and acquiescence of the respondent members of the board of public welfare." But that was not the equivalent of a removal by the board of public welfare. *Simpson* v. *Marlborough*, 236 Mass. 210, 214. *Otis Staples Lumber Co. Ltd.* v. *Federal National Bank of Boston*, 258 Mass. 182, 184. *Rooney, petitioner*, 298 Mass. 430, 433.

Though the removal by the bureau was unauthorized, a writ of mandamus will not issue to reinstate the petitioner in the office of supervisor of old age assistance, unless he rightfully held that office. Therefore we must consider the validity of his permanent appointment to that office on October 26, 1937. That appointment was not made by any local board of public welfare consisting of a number of persons. It does not appear whether or not such a board was actually in existence at the time, but the implication from the record is that no such board was functioning. On June 19, 1933, the city council of Newburyport, acting under a Plan B charter (G. L. [Ter. Ed.] c. 43, §§ 56–63), had purported by ordinance to abolish the local board of public welfare, consisting of three members, and to transfer its powers and duties to a single relief commissioner to be appointed annually by the mayor, subject to confirmation by the city council. The permanent appointment of the petitioner on October 26, 1937, was made by the person who had been appointed in that manner to the office of relief commissioner. It was not until December 17, 1937, that by ordinance the ordinance of June 19, 1933, was repealed, and a board of public welfare consisting of three persons was again established. It is unimportant, in our opinion, to consider whether the ordinance of December 17, 1937, was properly advertised under G. L. (Ter. Ed.) c. 43, § 23, and c. 40, § 32A.

By the city charter in force just before the adoption of a Plan B charter in 1919, the board of overseers of the poor

(as the board of public welfare was then called) consisted of three persons elected at large. St. 1890, c. 257. The Plan B charter (G. L. [Ter. Ed.] c. 43, § 60) changed this, if at all, only by providing that "members of municipal boards . . . as their terms of office expire, shall be appointed by the mayor, subject to confirmation by the city council." *Bradley* v. *Marlborough*, 296 Mass. 253. *King* v. *Mayor of Quincy*, 270 Mass. 185. By G. L. (Ter. Ed.) c. 43, § 5, "Until superseded under this chapter, the organization of the executive and administrative departments, and the powers and duties of the officers and employees of any city adopting any of the plans provided for in this chapter, and the fiscal year of such city shall remain as constituted at the time of the adoption of such plan; but the city council or other legislative body may at any time by ordinance, consistent with general laws, reorganize, consolidate or abolish departments, in whole or in part; transfer the duties, powers and appropriations of one department to another, in whole or in part; establish new departments . . . ."

Passing without decision the question whether a board of public welfare is a department of the city within the power granted by that section (*Attorney General* v. *Stratton*, 194 Mass. 51; *King* v. *Mayor of Quincy*, 270 Mass. 185, 187; *Broadhurst* v. *Fall River*, 278 Mass. 167; *Crocker* v. *Deschenes*, 287 Mass. 202), it is to be observed that the exercise of the power to reorganize departments under G. L. (Ter. Ed.) c. 43, § 5, must be "consistent with general laws." *Sullivan* v. *Lawson*, 267 Mass. 438. The changes made under that section that have been given effect have been in departments the organization of which is not regulated by general statute. *McLaughlin* v. *Mayor of Cambridge*, 253 Mass. 193. *Reynolds* v. *McDermott*, 264 Mass. 158.

By G. L. (Ter. Ed.) c. 41, § 1, every town is required, except when other provision is made by law, to choose by ballot from its inhabitants three or five members of the board of public welfare, for the term of one or three years. By G. L. (Ter. Ed.) c. 4, § 7, Thirty-fourth, the word town,

"when applied to towns or officers or employees thereof, shall include city." By G. L. (Ter. Ed.) c. 40, § 1, "Except as otherwise expressly provided, cities shall have all the powers of towns and such additional powers as are granted to them by their charters or by general or special law, and all laws relative to towns shall apply to cities." By G. L. (Ter. Ed.) c. 41, § 3, "Officers of cities shall have the powers and be subject to the liabilities of the corresponding town officers, if no other provisions are made relative to them." *Railroad National Bank* v. *Lowell*, 109 Mass. 214. *Hill* v. *Easthampton*, 140 Mass. 381. *Commonwealth* v. *Byard*, 200 Mass. 175. *Imperishable Arts, Inc.* v. *Cambridge*, 275 Mass. 5. G. L. (Ter. Ed.) c. 41 is entitled, "Officers and Employees of Cities, Towns and Districts."

Parts of G. L. (Ter. Ed.) c. 41, § 1, such as the provision for selectmen, are obviously inapplicable to cities. But other parts have already been held to apply to cities. *Attorney General* v. *Tillinghast*, 203 Mass. 539, 545 (auditors). *Hooker* v. *McLennan*, 236 Mass. 117, 119 (assessors). Many special city charters have contained express provisions for administrative boards and officers that may have superseded the provisions of that section. But we find no provision under which a city which had no earlier charter providing for a board of public welfare but adopted one of the five short forms of charter offered by G. L. (Ter. Ed.) c. 43 as now amended could have a board of public welfare, except the provision of c. 41, § 1. See *Gilliatt* v. *Quincy*, 292 Mass. 222. Most sections of the General Laws that mention a local board of public welfare merely assume its existence. A number of sections assume a plurality of members. G. L. (Ter. Ed.) c. 115, § 19; c. 117, §§ 3, 17, 25; c. 119, § 49; c. 127, § 95. We think that the ordinance that substituted a single relief commissioner for the board of public welfare of three members was not "consistent with general laws," and was void. The office claimed by the petitioner was created by an officer who had no legal existence, and consequently the office itself has no legal existence. The petition was rightly dismissed.

*Exceptions overruled.*