FRANK R. WASSON *vs.* DIRECTOR OF CIVIL DEFENSE.

Suffolk.    May 5, 1959. — June 2, 1959.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Civil Defense. Commonwealth,* Officers and employees.

Evidence at the hearing of a mandamus petition seeking reinstatement of the petitioner as an administrative assistant in the State civil defense agency, a position not subject to the civil service, from which the petitioner had purportedly been removed by the senior administrative assistant of the director of civil defense without any prior direction or authorization from the director and while the director was absent from the Commonwealth, warranted findings that the senior assistant's action was wholly arbitrary, that the director had not delegated to the senior assistant the authority vested in the director by St. 1950, c. 639, § 2, to "remove" assistants and had not "subsequently, formally or by writing of any kind affirm[ed] the act" of the senior assistant in removing the petitioner, and that the director had not himself removed the petitioner, even if he had passively acquiesced in the senior assistant's action; and the petitioner was entitled to reinstatement as of the date of the purported removal.    [324–326]

The employment of an administrative assistant in the State civil defense agency, a position not subject to the civil service, expired on December 31, 1957, where it appeared that the agency operated in accordance with rules and regulations issued under G. L. c. 30, § 45 (6), as amended through St. 1955, c. 643, § 2, that in October, 1957, the director of civil defense under such regulations had asked the division of personnel and standardization for requisite approval of the extension of the serv-

ice of the assistant and other employees of the agency through December 31, 1957, with the intention that such employees "would remain . . . in the service of the agency, only up until December 31, 1957," that the division of personnel and standardization had approved that request, and that on December 18, 1957, the director of civil defense had requested it to approve a further extension of service of most of the same employees of the agency through February 15, 1958, but had intentionally omitted the name of the assistant from the request. [327]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on May 19, 1958.

Upon transfer to the Superior Court, the case was heard by *O'Connell*, J.

*Harris A. Reynolds,* (*Jason A. Aisner* with him,) for the petitioner.

*Joseph J. Hurley,* for the respondent.

CUTTER, J. This is a petition for a writ of mandamus seeking reinstatement by the State director of civil defense (the director) of Wasson as administrative assistant (sector director) in the State civil defense agency. The relief granted is more fully described below. Both Wasson and the director have appealed. The evidence is reported.

The trial judge made findings upon which the following statement of the principal facts is based. The civil defense agency exists under St. 1950, c. 639. The director by § 2 "may . . . appoint . . . assistants . . . and may remove them." The employees so appointed are not subject to the civil service provisions found in G. L. c. 31. It was conceded by Wasson that the director had power to remove Wasson at pleasure.

While the director was absent from the State on December 2, 1957, one Zizza, senior administrative assistant, without any prior direction or authorization from the director, purported to remove Wasson by action which the trial judge would have been warranted in finding was wholly arbitrary. The action had been taken when Zizza "had exercised the power of a senior assistant for approximately three hours." The judge found that the director did not "subsequently, formally or by writing of any kind affirm the

act of Zizza," and ruled that c. 639 "did not give power of discharge to Zizza," but that the "power vested in . . . [the director] only." The "evidence . . . did not establish delegation of the power to Zizza; and . . . [his] act . . . was . . . without warrant of law." The judge, however, found that the "employment of . . . [Wasson] was limited to the period of the then existing authorization" (mentioned below) of Wasson's employment which ended December 31, 1957. The judge accordingly ordered that Wasson be reinstated with pay for the period December 2–31, 1957, but for no longer period.

1. The evidence shows that the director's actions with respect to Wasson throughout the relevant period were by no means clear cut and unequivocal. Wasson had been notified by the agency's administrative offices on October 9, 1957, that "we have established a policy of allowing the [a]rea [d]irectors to . . . discharge their own [s]ector [d]irectors subject only to personnel policy." A grievance committee to review proposed and purported removals had been set up by the director, not as a matter of right, but as a matter of fairness. In a memorandum, the director had stated "that no employee is to be discharged without sufficient cause" and that it would "be incumbent on any [a]rea [d]irector who discharges any employee . . . to justify the discharge before this committee." The director testified that he had told his area directors "back . . . in . . . October . . . that . . . [he] would not delegate any . . . powers conferred . . . by statute, but their . . . recommendation would affect . . . [his] decision. If they didn't want a sector director, all they had to say was, 'We don't want him,' and . . . [he, the director] would see that he was discharged." He also told them he "didn't want any arbitrary dismissals." From this confused testimony the judge plainly was warranted in finding there had been no express delegation to Zizza of authority to discharge, even if we make the questionable assumption that the director could delegate his power to discharge at all. We intend no suggestion that he could.

Wasson was notified by a letter of December 5 from one Nickerson, the chief of administration and personnel of the agency, that his "services . . . terminated as of December 2, 1957," but this letter does not appear to have been sent by the director or at his direction. Nickerson, on December 11, 1957, sent Wasson another letter, composed by the director "almost in its entirety," stating that "[w]e have been informed of your discharge by . . . Zizza" and telling Wasson that he was "entitled to a hearing by the . . . [g]rievance [c]ommittee." The letter further said that "[i]f the discharge is not justified, it is mandatory that the employee be reinstated." On December 27, Nickerson received a letter from Wasson asking what action by him was necessary to obtain a hearing.

The director learned on December 5, by a telephone call to him in Battle Creek, Michigan, from Mrs. Wasson, that Wasson had been removed and later upon his return was again so informed by his chief of staff and by Nickerson. As the trial judge found, no document signed by the director amounts to formal action expressly confirming Zizza's action. The director's testimony indicates that he may have thought he "was supporting . . . Zizza's desire not to retain" Wasson, and that Wasson's employment then was "completely terminated, but not necessarily permanently." However, he also testified that he was "merely allowing them [apparently Zizza and Nickerson] to exercise initial action, subject to . . . [his] supervision"; that before he "made final determination . . . [he was] awaiting the grievance committee's recommendation"; and that "if they [the committee] had brought back . . . a report . . . that he [Wasson] was relieved from his duties unjustifiably, . . . [he, the director] would have . . . reinstated him to an administrative position . . . given him a new position." The director further testified that he had told Zizza and other area directors that "if they discharged anybody . . . and . . . [he] had reason to believe it . . . improper . . . [he] was going to submit it . . . to the . . . grievance committee to determine that." The closest to affirmative action by

the director prior to December 31 was the letter of December 11, mentioned above. That, however, was not explicit and was by no means the direct statement reasonably to be expected from an executive backing up a subordinate by immediate and complete ratification of the subordinate's action. As indicated below, a letter written by the director on December 18, 1957, did nothing to affect the situation prior to December 31.

On this evidence, very largely oral, there was clear basis for the conclusion reached by the trial judge that no formal action of the director himself terminated Wasson's employment prior to December 31, 1957. His conclusion certainly was not plainly wrong, for he was not required to conclude that even passive acquiescence by the director in Zizza's action was the equivalent of suspension or discharge of Wasson by the director himself. *Furlong* v. *Ayers*, 305 Mass. 455, 456–457.

2. The civil defense agency was operated in 1957 in accordance with rules and regulations (introduced in evidence) issued under G. L. c. 30, § 45 (6), as amended through St. 1955, c. 643, § 2.[1] Regulation No. 1 requires each official desiring to make an appointment to notify the division of personnel and standardization. In the case of an appointment like that of Wasson, not under civil service provisions, the division, if it approves, will so indicate to the appointing official. See Reg. No. 4 (b). Wasson had first gone to work for the agency in February, 1955. Under the regulations mentioned above, the director, on October 16, 1957, had asked the director of the division of personnel and standardization for approval of the extension of the service of Wasson and some seventy-four other employees of the agency through December 31, 1957. This approval had been given. A prior requisition for these services was then about to expire on October 31, 1957, and, without this approval, the employees' services would have ended on that date. It was the director's intention, so far as the approval of his letter of

[1] See subsequent amendments of other portions of § 45 by St. 1956, c. 729, §§ 1–4, and by St. 1957, c. 648, §§ 1, 2.

October 16, 1957, was concerned, that Wasson and the other employees, by virtue of that approval at least, "would remain . . . in the service of the agency, only up until December 31, 1957."

Similarly on December 18, 1957, the director wrote to the division asking a further extension to February 15, 1958, for most of the same employees, but Wasson's name was omitted from this letter. The director was aware of this omission, and intended that "Wasson would not be an employee . . . until such a time as the grievance committee could . . . bring back a recommendation that his discharge was unjustified." This letter was a formal manifestation of intention not to reappoint Wasson for any period after December 31, but in terms it had no reference to the period prior to that date. Even if the director, on December 18, 1957, thought that Wasson was then no longer an employee, the letter of December 18 did nothing to make that thought manifest as a formal approval of Zizza's action.

Upon this evidence, the trial judge was justified in determining that Wasson's employment simply expired on December 31. The director's failure to reappoint Wasson sufficiently showed affirmative intention that this employment was to end December 31. This circumstance makes unnecessary consideration (a) of events after December 31, 1957, which have been argued, and also (b) of the contention of Wasson that the director had no power to suspend Wasson. The director himself did nothing to affect Wasson's employment for the period prior to December 31. Since he alone had removal power, Wasson remained an employee until then, but by the director's action he ceased to be an employee after that date.

3. In behalf of the civil defense director, it is argued that the trial judge erred in admitting evidence of the reasons asserted by Zizza for his purported discharge of Wasson, both in conversation with Wasson and before the grievance committee. In our view of the case it is unnecessary to decide this question as the conclusions stated above do not depend in any way on this evidence.

4. The order for judgment is affirmed. Judgment is to be entered in accordance with that order.

*So ordered.*