MAX YOUNG *vs.* MAYOR OF BROCKTON
(and a companion case[1]).

Plymouth.  Suffolk.  March 5, 1963. — May 14, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Alcoholic Liquors,* Licensing board.  *Municipal Corporations,* Officers and
    agents.  *Certiorari.  Practice, Civil,* Parties.

Although it was irregular to allow the mayor of a city and the city to inter-
    vene in a certiorari proceeding against the Superior Court to review an
    order of that court dismissing a petition under G. L. c. 138, § 5, for re-
    view of the mayor's removal of the petitioner as a member of the city's
    alcoholic liquor licensing board, it was proper to allow the mayor and
    the city to be heard.  [124]
Certiorari lies against the Superior Court to correct errors of law in a pro-
    ceeding in that court under G. L. c. 138, § 5, for review of a removal of
    a member of a city's alcoholic liquor licensing board, notwithstanding the
    provision of § 5 that "there shall be no appeal from the decision" of the
    Superior Court.  [124]
An appointment to membership on the alcoholic liquor licensing board of a
    city having a Plan D charter by the city manager, which was not con-
    firmed by the city council as required by G. L. c. 138, § 4, as amended
    through St. 1958, c. 80, was a nullity; nothing in G. L. c. 43, §§ 89, 90, cr
    92 indicates that the requirement of confirmation in c. 138, § 4, as
    amended, should not prevail.  [124–127]

PETITION for a writ of mandamus filed in the Superior
Court on December 18, 1961.

The petitioner appealed from an order by *Dewing,* J., for
judgment "for the respondent dismissing the petition."

PETITION for a writ of certiorari filed in the Supreme
Judicial Court for the county of Suffolk on October 11, 1962.

The case was reserved and reported by *Spiegel,* J., with-
out decision.

*Manuel Katz* for the petitioner.

*Pasquale J. Piscitelli,* City Solicitor (*George N. Asack,*
Assistant City Solicitor, with him), for the Mayor of Brock-
ton & another.

---

[1] The companion case is Max Young *vs.* Superior Court & others.

WHITTEMORE, J. The petitioner seeks an adjudication that he is a duly appointed member of the alcoholic liquor licensing board (licensing board) of the city of Brockton (G. L. c. 138, § 4, as amended through St. 1958, c. 80[2]) and hence that the action of the mayor purporting to remove him, without charges, reasons given or a hearing, was invalid (G. L. c. 138, § 5, as appearing in St. 1933, c. 376, § 2[3]).

On the two petitions in the Superior Court, one for a writ of mandamus and the other for review under G. L. c. 138, § 5, orders were entered, respectively, for judgment for the respondent and for dismissal. The petitioner has appealed from the first order (G. L. c. 213, § 1D) and seeks a review of the second by a petition for a writ of certiorari. In the latter case the mayor and the city of Brockton were allowed to intervene. This was irregular but, though not properly parties, the mayor and the city might be heard. *Marcus* v. *Commissioner of Pub. Safety*, 255 Mass. 5, 8. *Sharpe* v. *Registrars of Voters of Northampton*, 342 Mass. 620, 622.

Errors of law may be reviewed on certiorari notwithstanding the provision of c. 138, § 5, that "there shall be no appeal from the decision" of the Superior Court. *MacKenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 614, and cases cited.

The issue is whether the petitioner's appointment in 1961, by the city manager (Brockton then having a Plan D charter[4] under G. L. c. 43, §§ 79–92A), was a nullity because not confirmed by the city council in accordance with G. L. c. 138, § 4.

This court has held that the provisions of G. L. c. 138, § 4, as to appointment and removal, are unaffected by provisions of city charters. Chapter 138, § 4, when adopted in 1933 (St. 1933, c. 376, § 2), contained no requirement of

---

[2] "In each city which is not exempt by the provisions of section ten there shall be a licensing board appointed by the mayor, subject to confirmation by the board of aldermen or, if there is no such board, by the city council . . . ."

[3] The members "may be removed by the mayor for cause, after charges preferred, reasonable notice thereof, and a hearing thereon; and the mayor shall, in the order of removal, state his reasons therefor."

[4] The Plan D charter was superseded in Brockton on January 1, 1962, by Plan B (G. L. c. 43, §§ 56–63) under which the mayor is the "chief executive officer."

confirmation of the mayor's appointments to the licensing
board. In *Crocker* v. *Deschenes,* 287 Mass. 202 (1934), it
was held that an unconfirmed appointment was valid not-
withstanding G. L. c. 43, § 60 (Plan B), which provides,
inter alia, that "all heads of departments and members of
municipal boards, except the school committee, officials ap-
pointed by the governor, and assessors if elected by the
people . . . shall be appointed by the mayor, subject to
confirmation by the city council . . .." In *McDonald* v.
*Superior Court,* 299 Mass. 321 (1938), it was held that the
power of removal given to the mayor by G. L. c. 138, § 5,
was not qualified by the requirement of Pittsfield's charter
(St. 1932, c. 280, § 30) that removal be subject to approval
of the council. These holdings are founded primarily, we
think, in the importance of uniformity in the administration
of a State wide statute. The opinions stress the distinc-
tion between a licensing board and the usual "municipal
board." *Crocker* case, *supra,* 207. *McDonald* case, *supra,*
324. Whether the office of licensing board member is a
municipal office for some purposes (see *Commonwealth* v.
*Dowe,* 315 Mass. 217, 222–224; *Commonwealth* v. *Oliver,* 342
Mass. 82, 84), the *Crocker* and *McDonald* cases establish
that it is not a municipal office to which charter provisions
in respect of confirmation of appointment or consent to re-
moval apply.

Section 89 of c. 43 provided at the time of these decisions
that the city manager should be "the administrative head
of the city government and shall be responsible for the ad-
ministration of all departments." Statute 1948, c. 459,
§ 8, expanded § 89 so that the city manager, with exceptions
not relevant, is "responsible for the administration of all
departments, commissions, boards and offices of the city."
This amendment was without effect on the nature of the
office of licensing board member.

There is nothing in c. 43, § 92, cited by the petitioner, that
supports his contention. The prohibitions and criminal
penalties of § 92 apply to members of the city council who
"direct or request the appointment of any person to, or his

removal from, office . . . or in any manner take part in the appointment or removal of officers or employees in that portion of the service of said city for whose administration the city manager is responsible.'' The licensing board is not one of the "boards . . . of the city'' under these sections. Nothing in § 92 suggests otherwise and we do not reach the issue whether the mistaken assumption of power to confirm an appointment or approve a removal would be subject to its provisions.

The petitioner contends that, in any event, the requirement of § 4 for confirmation by the council, is, in effect, negated by G. L. c. 43, § 90, which gives to the city manager "all the powers, rights and duties, other than legislative, had, possessed or exercised, immediately prior to the adoption of this plan, by the mayor, board of aldermen, common council . . . .'' We disagree.

We discern in c. 43, § 90, no legislative intention that the confirming function of the city council under c. 138, § 4, be transferred to the city manager. True, the present broad power of the city manager did not exist in 1933 and 1934 when c. 138, §§ 4 and 5, were enacted and (as to § 4) amended. Then the city manager's powers under § 90 did not include "all . . . [those] exercised [theretofore] . . . by the . . . council.''[5] We think, however, that the subsequent amendment of c. 43, § 90, by St. 1948, c. 459, § 8, did not intend a qualification of the requirements of c. 138, §§ 4 and 5. That amendment of § 90 was an enactment in respect of the "ordinary and normal functions of municipal government . . . .'' Crocker v. Deschenes, 287 Mass. 202, 210.

The differing provisions of the several charter plans in 1933 and 1934 in respect of appointments and confirmation

[5] In 1934 § 90 provided: "The city manager shall be the administrative head of the city government, see that within the city the laws of the commonwealth and the ordinances, resolutions and regulations of the council are faithfully executed, attend all meetings of the council, and recommend for adoption such measures as he shall deem expedient, make reports to the council from time to time upon the affairs of the city, keep the council fully advised of the city's financial condition and its future financial needs and appoint and remove all heads of departments, superintendents and other employees of the city.''

which, except as to Plans D and E, are now in effect without change, tend to confirm that the Legislature in enacting c. 138, §§ 4 and 5 in 1933, and amending § 4 in 1934, intended that the essence of the requirements of §§ 4 and 5 prevail in all cities regardless of the local charter plan. Plan D at that time, as noted, left more power with the council than is now the case. Under Plan A no confirmation of the mayor's municipal appointments was required (c. 43, § 52). Plan B called for confirmation (§ 60). Plan C, with its commission form of government, called for appointments by that one of the five commissioners who was in charge of the particular department in which the appointment was made, subject to confirmation (§ 76), and the mayor was the chief executive officer and the commissioner of administration (§ 74). Under Plan E, first enacted by St. 1938, c. 378, § 15, the city manager by c. 43, § 104, has powers like those given under Plan D by § 90.

We rule that G. L. c. 138, § 4, calls for confirmation by the city council regardless of the lack of power of the council under c. 43 to confirm municipal appointments, and regardless of the grant by c. 43, § 90, of the council's former powers to the manager.

It does not follow from our construction of c. 138 that in Plan D and Plan E cities appointments under G. L. c. 138, § 4, must be made by the mayor rather than the city manager. The essential requirements of §§ 4 and 5 are appointment by the city's chief executive and confirmation by its legislative body and in such cities the city manager is the chief executive.

> *Order for judgment for the*
> *respondent in mandamus affirmed.*
> *Petition for writ of certiorari*
> *dismissed.*