## COMMONWEALTH *vs.* BERKSHIRE LIFE INSURANCE COMPANY.

Under the provisions of the St. of 1864, *c.* 208, and the St. of 1865, *c.* 283, imposing an excise on the franchises of corporations having a capital stock divided into shares, a mutual life insurance company cannot be taxed on its unredeemed guarantee stock.

CONTRACT for the amount of taxes assessed by the Commonwealth in 1864 under the St. of 1864, *c.* 208, and in 1865 and 1866 under the St. of 1865, *c.* 283, against the defendant corporation, a mutual life insurance company, chartered by the St. of 1851, *c.* 140, §§ 2, 4, 6 of which are as follows :

§ 2. " There shall be an original guarantee capital stock subscribed to the said corporation, which shall be one hundred thousand dollars, to be divided into shares by the corporation, half of which shall be paid in, in money, before the said corporation shall go into operation for the purpose of making insurance ; the other half of the said stock may be called for by the directors from time to time, when they deem it necessary or expedient, and shall be paid in by the holders of the stock, which shall always stand pledged to the corporation for all such assessments so called for.

§ 4. " Whenever the net surplus receipts of the said corporation over the losses and expenses, and after providing for risks, shall be sufficient for the purpose, the stockholders shall be entitled to an annual dividend of seven per cent. or to such less dividend as may be agreed on at the time of subscribing for the stock ; and in case of such dividend not being made in any one year it shall be made good at a subsequent period, when the net resources of the company shall be sufficient for paying the same.

§ 6. " After providing for risks, losses, incidental expenses and dividends as aforesaid, the directors shall set apart one quarter of the estimated surplus funds and receipts as a reserved fund, to be applied to the redemption of the guarantee stock; and whenever, after the expiration of ten years from the time of organizing the company, the amount of such fund shall be

sufficient for the purpose, and the assured shall vote to redeem the said guarantee stock, the same shall be redeemed."

In the superior court it was agreed that the company was duly organized under this charter, and an original guarantee capital stock was subscribed and paid in to the amount of one hundred thousand dollars, divided into one thousand shares of the par value of one hundred dollars each, according to the provisions of § 2, which subsequently was in part redeemed by payments to the holders thereof, out of the surplus funds and receipts, according to the provisions of § 6; the number of shares unredeemed on the first day of May in the years 1864, 1865, and 1866, being respectively six hundred and forty, five hundred and eighty, and five hundred and thirty, and the market value of such shares on those dates being the par value thereof; and that the company never otherwise had any capital stock divided into shares, nor was ever otherwise conducted for business or profit.

And it was further agreed that the tax commissioners determined the excess of the market value of the capital stock of the company over the value of its real estate, (it having no machinery,) at the sums of sixty-four thousand dollars, fifty-eight thousand dollars, and forty thousand dollars, for the years 1864, 1865, and 1866, respectively, and that the taxes for which this action was brought were assessed by the tax commissioners on a valuation of the franchise accordingly, the corporation being allowed for real estate to the amount of thirteen thousand dollars in 1866.

On these facts judgment was ordered for the Commonwealth; and the defendants appealed.

*J. C. Davis*, (*C. Allen*, Attorney General, with him,) for the Commonwealth.

*E. Merwin*, for the defendants.

FOSTER, J.* By the statute of 1864, c. 208, §§ 1, 5, a return is required from, and a tax imposed upon, " every corporation having a capital stock divided into shares;" which is computed

* GRAY, J., did not sit in this case.

on "the excess of the market value of all the stock of each corporation" "over the value of its real estate and machinery." The return is also required to be made "by the stock department of stock and mutual insurance companies." These are companies which under one charter unite two separate branches of business, the stock department doing a stock business, and the mutual department a mutual business, each independent of the other, with distinct interests, and constituting two companies under one corporate organization.

The defendant corporation is a mutual life insurance company, the original guarantee capital of which has not yet been redeemed. The holders of its capital stock are entitled to dividends of seven per cent. annually, payable "out of the net surplus receipts of the corporation over the losses and expenses and after providing for risks." Any deficiency of dividends in one year must "be made good at a subsequent period when the net resources of the company shall be sufficient for paying the same." One quarter of the surplus funds and receipts of the company is set apart as a reserve to be applied to the redemption of the guarantee stock.

This is the original fund, which stands as a security for the payment of losses upon policies until a sufficient premium reserve has been accumulated for that purpose. But it is tantamount to a debt from the corporation, for the ultimate payment of which provision is constantly made; and the stockholders have no interest in the business of the company beyond the payment of their stipulated dividends and the maintenance of the sinking fund out of which their stock is to be eventually redeemed and extinguished.

The principle on which the business of life insurance is conducted by this company is strictly mutual. All losses and expenses fall directly and solely upon the insured by lessening the distributions of surplus to which they alone are entitled. The tax imposed by the act under consideration is on the franchise, and not on the property, of corporations. On this ground only can its constitutionality be upheld. *Commonwealth* v. *Hamilton Manufacturing Co.* 12 Allen, 298. Ordinarily the value of a

franchise may be measured by the amount of business **done** under it. But there is no proportion between the value of the franchise of a mutual life insurance company and the amount of its guarantee stock. On the contrary, the amount of un-redeemed guarantee capital would usually be in an inverse ratio to the increase of the business of the company; because with growth and prosperity would come redemption. If the tax in question is levied on this class of corporations, it must be re-garded as an excise, not on the commodity of corporate existence and business, but on the commodity of having a guarantee fund as a protection during the infancy and weakness of the company. If its payment is enforced, it will fall exclusively on the assured for payment is to be made by the company, and there is no provision for reimbursement from the stockholders. As the guarantee fund is redeemed, the tax grows less, and finally terminates with its extinguishment. The younger and less flourishing a mutual life insurance company is, the more cer-tainly and heavily it will be subjected to taxation.

The business of mutual life insurance has never been treated by the legislature as an appropriate object of taxation. A tax upon it is in effect a tax upon prudence, and, for this reason probably, has never been resorted to, unless in the case now under consideration. These circumstances would have no weight if the intention to tax such companies had been une-quivocally expressed, but they become important when we are called upon to construe doubtful phraseology. It cannot be denied that in one sense, perhaps the literal one, the defendant corporation has a capital stock divided into shares. But if the language were " the capital stock of which is divided into shares," it would be apparent that these companies were not intended to be included They have no fixed and definite capital. It fluctuates constantly, being increased by every receipt and diminished by every payment. No one, whether in common parlance or using language accurately, would call the guarantee stock of a mutual life insurance company its capital. It is a liability rather than a part of the assets of the corporation, and should be so included in every statement of its pecuniary

condition. It is a capital furnished by way of guarantee against losses in excess of premiums; to pay dividends or interest on which all the remaining assets of the company left after payment of losses and current expenses stand pledged; and for the gradual redemption of which one quarter of the net surplus funds must be constantly reserved. But it is in no proper sense the capital of the company, and the shares do not, as in stock corporations, represent aliquot fractional interests in the property and franchise.

The express provision inserted in the act to include the stock department of stock and mutual insurance companies affords a strong presumption that the legislature did not contemplate the taxation of mutual life insurance companies upon their guarantee stock. If such had been their intention, the enumeration of this class also would have been at least equally natural and important. The maxim *Expressio unius est exclusio alterius* applies forcibly to a case like the present.

By the provisions of the statute the value of the real estate owned by the company to be taxed is deducted from the aggregate market value of the shares. But these guarantee stockholders have no interest in the real estate, and lose nothing by its taxation. And there is no propriety in such a deduction in the case of a tax on guarantee stock. Credit is likewise to be given to the several cities and towns in which shareholders reside, of an amount of taxes in proportion to the amount of stock held by residents in such cities and towns; a natural provision, and one the reasons of which are easily understood in the case of stock companies, but utterly fail in a case like the present, where the revenue is derived from the funds, not of resident stockholders, but of the whole body of mutual policy holders wherever resident.

Furthermore, the seventh section of the act allows credits to " stock insurance companies owning stock in other corporations " of the amount of taxes paid by such corporations on the stock so held. And it seems to us that the credit must have been intended to apply to all companies subjected by the act to taxation. If this be so, the expression " stock insurance companies "

must have been used as equivalent to the words insurance companies having a capital divided into shares." But no one would class the defendant corporation among stock insurance companies.

The question is by no means free from difficulty; but all the foregoing considerations have brought the minds of a majority of the court to the conclusion that the legislature did not intend to tax in this extraordinary and unequal manner the franchise of such mutual life insurance companies as happen not to have redeemed their guarantee capital. The language of the statute does not seem to us to be sufficiently explicit to require us to hold that such a tax has been imposed contrary to reason and probability.

The considerations applicable to the St. of 1865, *c.* 283, are almost identical with those we have already reviewed, and a repetition of them is unnecessary. The language under this statute is " all corporations having a capital stock divided into shares, chartered by this Commonwealth or organized under the general laws, for purposes of business or profit." We think the same rule must govern as under the act of the previous year.

It may be observed that the effect of this decision will not be to exempt the guarantee stock from taxation; but it will be taxed in the places where the shareholders reside, as in the case of national banks.

On the agreed facts there must be

*Judgment for the defendants.*