ERNEST V. DEL DUCA *vs.* TOWN ADMINISTRATOR OF
METHUEN & others
(and a companion case[1]).

Essex. October 8, 1974. — June 4, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Statute,* Revocation of acceptance, General law. *Municipal Corporations,* "Home rule," By-laws and ordinances, Planning boards. *Words,* "Inconsistent."

Following adoption by a town of a town charter under G. L. c. 43B, the Home Rule Procedures Act, and establishment of a town council, the town had no power to terminate the terms of office of planning board members previously elected for "five year terms each" pursuant to the mandate of c. 41, § 81A, under which the board had been established, and a provision in an ordinance of the council prescribing three year terms each for planning board members was void [7-9]; in so far as the ordinance purported to prescribe the powers and duties of the planning board, it was a nullity by reason of the fixing of the extent and limits of planning board powers and duties by the Legislature [9-13].

Following adoption by a town, which previously had elected a planning board of five members pursuant to G. L. c. 41, § 81A, of a new town charter under c. 43B and establishment of a town council and town administrator, an ordinance providing that the administrator should appoint a planning board of seven members was within the electives permitted by c. 41, § 81A, and was valid. [13-14]

---

[1]John R. Leone *vs.* Town Administrator of Methuen & others.

PETITIONS for writs of mandamus filed in the Superior Court on January 17, 1973.

The cases were heard by *Cross,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Michael P. Curran* (*Robert D. Smith* with him) for the defendants.

*George Karelitz* for the plaintiffs.

QUIRICO, J.   These are appeals by the defendants in two cases, consolidated for trial, from orders of a Superior Court judge that writs of mandamus[2] issue reinstating the plaintiffs as members of the planning board of the town of Methuen.   The judge filed a document entitled "Findings, Rulings and Order" in which he said that "[t]he cases, in effect, were submitted to me for decision *as a case stated.   G. L. c. 231, § 126."*[3]   The facts are not in dispute.

On March 16, 1938, Methuen, having a population in excess of 10,000, adopted a by-law establishing a planning board under G. L. c. 41, § 81A.[4]   This plan-

---

[2] This petition was filed on January 17, 1973.   Effective July 1, 1974, our new rules of procedure abolished the writ of mandamus. Mass. R. Civ. P. 1A, 81(b), 365 Mass. 731, 841 (1974).   The relief provided by that writ is nevertheless still available, although now it must be sought by complaint and summons.   *Beaton* v. *Land Court,* 367 Mass. 385, 386, fn. 3 (1975).

[3] The cases were not actually submitted as a case stated.   There was, however, no error in treating them in this fashion since the allegations admitted in the pleadings, the exhibits, and an "Agreement of the Parties" revealed no dispute as to the relevant facts. General Laws c. 231, § 126, was repealed by St. 1973, c. 1114, § 205, to accommodate the requirements of our new rules of procedure.

[4] General Laws c. 41, § 81A, as amended through St. 1961, c. 276, § 2, provides:   "Any city except Boston, and, except as hereinafter provided, any town may at any time establish a planning board hereunder.   Every town not having any planning board shall, upon attaining a population of ten thousand, so establish a planning board under this section.   A planning board established hereunder shall consist of not less than five nor more than nine members.   Such members shall in cities be appointed by the mayor, subject to confir-

ning board replaced the planning board which had been established in 1923 under G. L. c. 41, § 70. The by-law adopted in 1938 provided that "[a] Planning Board is hereby established under the provisions of General Laws, (Ter. Ed.) Chapter 41, Section 81A (Acts of 1936, Chapter 211) to consist of five members to be elected at the Annual Town Meeting in March, 1939, and thereafter in accordance with the provisions of the statute."

On March 1, 1971, the plaintiff Leone was elected a member of the planning board for a five-year term. On

mation by the city council and in towns be elected at the annual town meeting or be appointed in such manner as an annual town meeting may determine; provided, that a town which has a planning board established under section seventy may, at an annual town meeting or at a special town meeting called for the purpose, vote to establish a planning board under this section and may provide that the members of the planning board then in office shall serve as members of the planning board under this section until the next annual town meeting. When a planning board is first established or when the terms of members of the planning board established under section seventy serving as members of the planning board under this section expire, as the case may be, the members of the planning board under this section shall be elected or appointed for terms of such length and so arranged that the term of at least one member will expire each year; and their successors shall be elected or appointed for terms of five years each. Any member of a board so established in a city may be removed for cause, after a public hearing, by the mayor, with the approval of the city council. A vacancy occurring otherwise than by expiration of term shall be filled for the unexpired term, in a city, in the same manner as an original appointment, and, in a town, if the members of the board are appointed, in the same manner as an original appointment and, if they are elected, in the manner provided in section eleven. Such a board shall elect annually a chairman and a clerk from among its own number, and may employ experts and clerical and other assistants. It may appoint a custodian of its plan and records, who may be the city engineer or town clerk. No member of a planning board shall represent before such board any party of interest in any matter pending before it.

"Towns of less than ten thousand inhabitants, having no planning board established under this section may, by vote of the town meeting, authorize the board of selectmen to act as a planning board under this section until such a board is established; provided, that any such town, upon attaining a population of ten thousand, shall establish a planning board hereunder."

March 6, 1972, the plaintiff Del Duca was likewise elected to a five-year term on the board. On the latter date, the voters of Methuen also adopted, effective January 1, 1973, a new town charter under G. L. c. 43B, the Home Rule Procedures Act, inserted by St. 1966, c. 734, § 1. This act set forth procedures to be followed by cities and towns seeking to take advantage of the powers made available to them by art. 2 of the Amendments to the Massachusetts Constitution, as supplanted in 1966 by art. 89 of the Amendments, commonly denominated the Home Rule Amendment. A challenge to the validity of the 1972 vote by which Methuen adopted its charter was rejected by this court in *Tiberio* v. *Methuen*, 364 Mass. 578 (1974).

The new Methuen charter altered the preexisting governmental structure of the town in several important respects. Perhaps the most significant of these changes was the replacement of the town meeting with a legislative-executive system headed by a town council and a town administrator. On January 2, 1973, the new town council adopted, effective immediately, the "General Ordinances of the Town of Methuen." Section 6.20 of these ordinances was entitled "Planning Board." This section provided: "(a) *Mode of Appointment, Term of Office* — The town administrator shall appoint a planning board which shall consist of seven members. The term of office of each member of the planning board shall be for three years so arranged that as nearly an equal number of terms as is possible shall expire each year. (b) *Qualifications of Members* — The members of the planning board shall be persons especially fitted by education, training and previous experience to perform the duties of the office. (c) *Powers and Duties* — The planning board shall make studies and prepare plans of the resources, possibilities and needs of the town. They shall prepare and may from time to time amend and perfect a comprehensive plan which shall set forth in both graphic and textual forms, plans, programs and

policies to govern the future development of the entire town. The planning board shall also be the sub-division control agency of the town. The planning board shall have such additional powers and duties as are provided to planning boards by chapter 41 of the general laws and chapter 10 of these ordinances."

On January 8, 1973, the town administrator appointed seven persons to the planning board, three for one-year terms, and two each for two and three-year terms. The town council confirmed these appointments. The plaintiffs were the only two of the five members of the preexisting board who were not appointed to the new board.

On the foregoing facts, the judge ordered issuance of writs of mandamus reinstating the plaintiffs and the other three members of the preexisting board to their positions for the remainder of the terms to which they had been elected. The judge further ordered the town clerk to change the town records to reflect (a) that the members of the preexisting board had been reinstated to their elected terms, (b) that § 6.20 of the ordinances is a nullity, and (c) that the 1938 by-law establishing the planning board under G. L. c. 41, § 81A, is still in force and effect in Methuen. The defendants appealed therefrom to the Appeals Court. We then granted their application for direct appellate review by this court pursuant to G. L. c. 211A, § 10 (A). With modifications for reasons hereafter explained, we affirm the orders.

In granting the writs of mandamus, the judge apparently relied primarily on *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492 (1970). In that case we considered whether the Home Rule Amendment or the Home Rule Procedures Act had changed our former law regarding a municipality's power to revoke its prior acceptance of a general law. The rule in this area, as stated in *Brucato* v. *Lawrence*, 338 Mass. 612, 615-616 (1959), was: "In the absence . . . of some indication in the language, the form, or the subject matter of a particular statute enacted subject to local acceptance, that an ac-

ceptance once given may be revoked, the effect of a valid acceptance by a city or town is to make the statute operative in that community until the statute is repealed or amended. Once the condition precedent stipulated by the Legislature to the taking effect of the statute in the community is satisfied, it becomes applicable statute law, subject to change, as in the case of other statutes, only by subsequent action of the Legislature." In the *Dracut* case, at 497-498, we concluded: "In enacting the Home Rule Procedures Act (G. L. c. 43B) the Legislature included no grant of authority to municipalities to rescind, by unilateral action, their prior acceptance of any provision of the General Laws. That omission may reflect the Legislature's concern that if municipalities had unbridled authority to rescind prior acceptance of basic provisions of the General Laws by unilateral action, there might result frequent and precipitous changes in the administration of municipal affairs which might produce chaos, all contrary to the public interest. Consequently, we hold that the Home Rule Amendment and the Home Rule Procedures Act do not render inoperative the rule laid down in *Brucato* v. *Lawrence.*"

As the defendants point out, however, the statute involved here is not of the same sort as those involved in the *Lawrence* and *Dracut* cases. But this distinction, if anything, works in favor of the plaintiffs. General Laws c. 41, § 81A, when read in conjunction with G. L. c. 41, §§ 70 and 81B, requires every town with a population of 10,000 or more and every city except Boston to establish a planning board under that section, unless the city or town had established a planning board under § 70 prior to 1937 and desired to continue with that original format. No municipal vote is required to accept the legislation in question here.[5] The inference that the

_____

[5] Because Methuen already had a planning board established under G. L. c. 41, § 70, at the time it implemented G. L. c. 41, § 81A, it could have kept the § 70 board in operation rather than switching to the § 81A board. In this narrow sense, therefore, it might be said

defendants draw from this fact is that G. L. c. 41, § 81A, is "strictly 'enabling legislation.'" Since neither citation nor explanation is offered for this contention, we cannot be certain just what is meant by it. In any event, we think it clear that if a municipality is prohibited from revoking its acceptance of a statute which it was free to decline to accept to begin with, it is a fortiori prohibited from rescinding its implementation of a statute which it was required to implement. The town being powerless to rescind its implementation of the statute, it is also powerless, at least under our pre-Home Rule precedents, to cut short the terms of those elected to the board. See, for example, *Crocker* v. *Deschenes*, 287 Mass. 202, 207-210 (1934); *Adie* v. *Mayor of Holyoke*, 303 Mass. 295, 301-302 (1939). Compare *Kaczmarski* v. *Mayor of Springfield*, 346 Mass. 432, 435-436 (1963). These cases indicate that a municipality cannot ordinarily remove members of a board or agency established pursuant to a general law, even where there exists cause for removal, unless the general law itself explicitly or implicitly authorizes such removal. The present case does not require us to determine whether any modification of this rule is appropriate in light of the Home Rule Amendment because the language of G. L. c. 41, § 81A, itself resolves the issue. The statute provides that "[a]ny member of a [planning] board . . . established in a city may be removed for cause, after a public hearing, by the mayor, with the approval of the city council." The statute having specified the circumstances in which removal may occur, it may be argued that removal is prohibited in other circumstances. Cf. *Commonwealth* v. *Berkshire Life Ins. Co.* 98 Mass. 25, 29 (1867). Even if we read the statutory reference to cities to include towns with representative forms of government, see fn. 6, *infra*, thus permitting the town administrator in Methuen to remove

that this case is analogous to the "acceptance" cases. Of course, this line of reasoning merely leads to the conclusion that Methuen, having converted to a § 81A board, could not revert to a § 70 board.

a member of the board for cause, we can still find no authority to permit a removal in the absence of cause. The fact that the attempted removal occurred in the course of an attempt to create a "new" board does not affect this conclusion.

The defendants nevertheless further suggest that a vote of the representatives of a town which has adopted a home rule charter can somehow negate the force of a mandatory general law whenever this vote concerns "local" issues. We reject this contention for reasons which should be obvious. Section 6 of the Home Rule Amendment provides in part: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the . . . laws enacted by the general court in conformity with powers reserved to the general court by section eight." The powers reserved to the general court by § 8 include "the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two." Section 13 of the Home Rule Procedures Act generally repeats the language of § 6 of the amendment, and further provides: "Nothing in this section shall be construed to permit any city or town, by ordinance or by-law, to exercise any power or function which is inconsistent with any general law enacted by the general court before November eighth, nineteen hundred and sixty-six which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two."

It is plain that G. L. c. 41, § 81A, is a general law that in its mandatory aspect applies alike to a class of not fewer than two cities (all cities except Boston) and alike to a class of not fewer than two towns (all towns having populations of 10,000 or more). *Opinion of the Justices,* 357 Mass. 831 (1970). *Belin* v. *Secretary of the Commonwealth,* 362 Mass. 530 (1972). Thus, there can be

no question that G. L. c. 41, § 81A, remains effective as to both of those classes, notwithstanding the Home Rule Amendment. And since Methuen must be a member of one of those two classes,[6] the statute remains effective as to it.

Applying the foregoing principles to § 6.20 of the general ordinances of the town of Methuen, it is clear that the ordinance cannot stand in its present form. General Laws c. 41, § 81A, provides in part that "the members of the planning board under this section shall be elected or appointed for terms of such length and so arranged that the term of at least one member will expire each year; and their successors shall be elected or appointed *for terms of five years each*" (emphasis supplied). The ordinance here in question provides in part: "The term of office of each member of the planning board shall be *for three years* so arranged that as nearly an equal number of terms as is possible shall expire each year" (emphasis supplied). The two provisions are facially inconsistent as to the term of office of the members of the board. At least in this regard, therefore, the ordinance is void.

Thus far we have established (a) that Methuen had no power to terminate the terms of office of planning board members elected to their positions pursuant to G. L. c. 41, § 81A, and (b) that Methuen had no power to prescribe three-year terms of office for members of the planning board since the statute prescribes five-year terms. The judge was therefore clearly correct in

[6] Traditionally, the distinction between towns and cities was that the former were governed directly by the qualified inhabitants, while the latter were governed indirectly by the inhabitants through representatives. See *Opinion of the Justices*, 229 Mass. 601, 609 (1918). Following adoption of its home rule charter, Methuen clearly has a representative form of government. It has, however, retained the appellation "Town." Whether Methuen might be considered a city for some purposes need not be answered here. See *Id.* at 610: "It is an immaterial circumstance that . . . the name 'town' is retained as descriptive of the municipal organization. It is the substance of the thing done, and not the name given to it, which controls."

ordering the plaintiffs and the other members of the preexisting planning board reinstated for the remainder of the terms to which they were elected.  In our view, however, it still does not necessarily follow that § 6.20 of the Methuen general ordinances is wholly void.  Nor does it necessarily follow that the 1938 by-law creating a five-member board is still in effect in its entirety.

The Home Rule Amendment implicitly repudiated "Dillon's Rule." *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 356 (1973).  The rejected rule provided that *"a municipal corporation possesses and can exercise the following powers, and no others:*  First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation, — not simply convenient, but indispensable.  Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."  Dillon, Municipal Corporations, § 237, pp. 449-450 (5th ed. 1911).  This rule had long served as the law in this Commonwealth.  See, for example, *Spaulding* v. *Lowell,* 23 Pick. 71, 74-75 (1839); *Burnham* v. *Mayor & Aldermen of Beverly,* 309 Mass. 388, 389 (1941).

The law in this regard has been fairly reversed by the Home Rule Amendment and the Home Rule Procedures Act, which permit municipalities to exercise any power or function conferable on them by the Legislature, so long as exercise of that power is "not inconsistent" with the Constitution or a general law enacted pursuant to the Legislature's retained powers.  We dealt at length with this question of inconsistency in *Bloom* v. *Worcester,* 363 Mass. 136 (1973), and established the following standard: "In determining whether a local ordinance or by-law is 'not inconsistent' with any general law within the meaning of those words in § 6 of the Home Rule

Amendment and in § 13 of the Home Rule Procedures Act, the same process of ascertaining legislative intent must be performed as has been performed in the Federal preemption cases and in our own cases involving 'inconsistent' or 'repugnant' local ordinances or by-laws. The legislative intent to preclude local action must be clear. If the Legislature has made no explicit indication of its intention in this respect, a legislative intention to bar local ordinances and by-laws purporting to exercise a power or function on the same subject as State legislation may nevertheless be inferred in all the circumstances. Legislation which deals with a subject comprehensively, describing (perhaps among other things) what municipalities can and cannot do, may reasonably be inferred as intended to preclude the exercise of any local power or function on the same subject because otherwise the legislative purpose of that statute would be frustrated. . . . A conclusion that the Legislature intended to preempt a subject may also be inferred if the Legislature has explicitly limited the manner in which cities and towns may act on that subject. . . . See *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492 [1970] . . .. The existence of legislation on a subject, however, is not necessarily a bar to the enactment of local ordinances and by-laws exercising powers or functions with respect to the same subject. If the State legislative purpose can be achieved in the face of a local ordinance or by-law on the same subject, the local ordinance or by-law is not inconsistent with the State legislation, unless the Legislature has expressly [or impliedly, according to the above guidelines] forbidden the adoption of local ordinances and by-laws on that subject." 363 Mass. at 155-156 (1973).

We think that, under the standard enunciated in the *Bloom* case, G. L. c. 41, § 81A, particularly when considered with related legislation, precludes any local by-law or ordinance on the subject of planning boards except as specifically authorized by the Legislature. The legislation involved here deals comprehensively with the

subject, describing in detail what municipalities can and cannot do. Moreover, the Legislature has explicitly limited the manner in which cities and towns may act on the subject of planning boards. As noted previously in this opinion, G. L. c. 41, § 81A, is mandatory in' its terms; within certain limits it details how and when members of planning boards are to be selected, what their terms of office are to be, and when and why they may be removed. In addition, § 81A is only one of more than thirty separate, but interconnected sections of c. 41 dealing with the creation and operation of planning boards. See, for example, the Subdivision Control Law, G. L. c. 41, §§ 81K-81GG, inclusive, which makes the planning board the subdivision control agency in all cities and towns, except Boston. Furthermore, recognizing the necessity of comprehensive planning in this regard, the Legislature has provided for the creation of regional and metropolitan planning districts, related to a Statewide division of planning within the Department of Commerce and Development. See G. L. c. 23A, §§ 1,.3, 4; c. 40B, §§ 1-29. The intended intimate connection between this State and regional planning superstructure and the local planning boards is made clear by the statutory require-ment that some members of these local boards serve on the district or regional planning commissions. G. L. c. 40B, §§ 4, 12. In short, the Legislature has, as it has power to do, taken the entire subject of the establish-ment, powers, and duties of local, regional, and State planning boards in hand, and has thereby precluded any local action which would impair the operation and effect of the statutes in that field. See *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 360 (1973). See also *Rice* v. *Santa Fe Elevator Corp.* 331 U. S. 218, 229-236 (1947); *Goldstein* v. *California,* 412 U. S. 546, 567-570 (1973).

In regard to § 6.20 of the Methuen general ordinances, therefore, we must conclude that Methuen, as well as

being powerless to terminate the terms of office of members of the preexisting planning board and to prescribe three-year terms for planning board members, was also powerless to specify the planning board's powers and duties in a manner which deviated in any respect from the powers and duties established by the legislation on the subject. In so far as § 6.20 (c) of the General Ordinances of the Town of Methuen purports to prescribe the powers and duties of the planning board, that ordinance is a nullity because the extent and limits of these powers and duties have been fixed by the Legislature.

On the other hand, the statute itself explicitly permits cities and towns to select the size of planning boards, so long as the number of members is no less than five and no more than nine. And the statute itself also gives towns a choice between elective and appointive modes of choosing board members. Examining this statutory pattern against a background of the philosophy of the Home Rule Amendment and the Home Rule Procedures Act, we believe Methuen was entitled, when reorganizing its governing structures, to change the size of the planning board from five to seven members and to specify that those members should be appointed by the town administrator rather than elected by the voters.

Our conclusion, therefore, is that some provisions of the ordinance are valid and some are not. In this situation, we believe it appropriate to apply to this ordinance the principles of severability we apply to legislation. The general rule is this: Whenever various portions of a statute have independent force, thus justifying the inference that the enacting body would have passed one without the other, this court will uphold the remainder of the enactment after the offending portion has been struck. *Commonwealth* v. *Petranich,* 183 Mass. 217, 220 (1903). *Krupp* v. *Building Commr. of Newton,* 325 Mass. 686, 691-692 (1950). *Opinion of the Justices,* 330 Mass. 713, 726 (1953). *Dalli* v. *Board of Educ.* 358

Mass. 753, 759 (1971). Sands, Sutherland Statutory Construction, §§ 44.03-44.04 (4th ed. 1973). We believe that the Methuen town council, had they considered the issue, probably would have determined that the planning board should consist of seven members to be appointed by the town administrator even though (a) the terms of the existing members could not be cut short, (b) the terms of office could not be made three rather than five years, and (c) the powers and duties of the board could not be delimited by the town. Accordingly, we hold that the judge below was correct to the extent that he ordered the members of the preexisting planning board reinstated for the balance of their elected terms and to the extent that he ordered the defendant town clerk to change the town records to reflect these reinstatements. To the extent, however, that the orders apparently required the clerk to change the town records to reflect that § 6.20 of the general ordinances is a nullity in its entirety and that the 1938 by-law creating a five-member board was still in full force and effect, those orders were partially erroneous. The orders must be amended to reflect that only those portions of § 6.20 which purport to set three rather than five-year terms of office and which purport to specify the powers and duties of the board are invalid. Similarly the orders should indicate that the town administrator's purported replacement of members of the board before the end of their elected terms was also invalid, but that those portions of § 6.20 which change the size of the board from five to seven members and which change the mode of selection of members from election to appointment are valid and effective.[7]

The orders appealed from are modified as outlined above. As modified, they are affirmed.

*So ordered.*

[7] The appointing authority is therefore free to appoint members to the two newly created positions and to any positions left vacant, or which become vacant, by virtue of the expiration of the terms of members of the preexisting board.