CHARLES H. TURNER & others[1] *vs*. CITY OF BOSTON & others.[2]

Suffolk. February 6, 2012. - June 15, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Municipal Corporations,* Removal of public officer, City council, Charter. *Public Officer. Conflict of Interest.*

This court concluded that the city council of Boston (council) had the authority, pursuant to the Charter of the City of Boston (charter), to promulgate Rule 40A of the Rules of the Boston City Council, which provides a means of referring matters concerning the conduct of councillors to the full city council for action [514-516]; however, the council did not have the authority, under either the charter or under any provision of State law, to employ the rule to remove a city councillor from office [516-522].

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Chester Darling* for the plaintiffs.

*Lisa A. Skehill Maki,* Assistant Corporation Counsel, for the defendants.

BOTSFORD, J. Charles H. Turner, an elected Boston city councillor, was convicted of attempted extortion and other Federal crimes on October 29, 2010. On December 1, 2010, before Turner had been sentenced on the convictions, the city council of Boston (city council, or council) voted to remove Turner from his office of city councillor pursuant to Rule 40A (rule 40A) of the Rules of the Boston City Council (rules), a rule adopted in 2009 by that body. On December 30, 2010, Turner, joined by several residents from his city council district, brought suit under 42 U.S.C. § 1983 (2006) in the United States District

---

[1] Jeanne Ackerly; Ernest R. Coston; Diane Dujon; Olga Dummont; Louis Elisa; Alma Finneran; Michael Heichman; Frederick C. Johnson; Karl Jones; Franco Marzurki; Carolyn Jupiter-McIntosh; Isaura Mendes; Judith Richards; M. Daniel Richardson, III; and Sarah-Ann Shaw.

[2] The city council of Boston and eleven of its thirteen members.

Court for the District of Massachusetts against the city of Boston (city), the city council, and eleven of the city councillors (collectively, defendants), alleging, inter alia, that the council's vote to remove him was void, and seeking declaratory and injunctive relief as well as damages. The District Court judge subsequently certified the following questions to this court pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981):

> "[1]. Did the Charter of the City of Boston, or any other provision of the laws of the Commonwealth of Massachusetts, authorize the Boston City Council to promulgate Rule 40A of the Rules of the Boston City Council and employ it to remove an incumbent Councillor from office before he was sentenced and removed automatically by operation of M.G.L. c. 279, § 30?
>
> "[2]. If so, is Rule 40A a civil or a criminal provision of law?"

*Turner* v. *Boston*, 760 F. Supp. 2d 208, 215 (D. Mass. 2011).

In answer to the first question, we conclude that the city council was authorized to promulgate rule 40A but did not have the authority, under the Charter of the City of Boston (city charter) or under any provision of State law, to employ the rule to remove Turner from office. In light of this answer, we need not provide an answer to the second question.

*Background.* In a November 19, 2008, criminal complaint filed in the United States District Court, Turner was charged with extortion, 18 U.S.C. § 1951 (2006), and making false statements to a Federal official, 18 U.S.C. § 1001(a)(1) (2006). On November 24, 2008, the then-president of the city council removed Turner from his positions as chairman of the council's committees on education and on human rights.[3] In a superseding indictment dated December 9, 2008, Turner was charged with several felonies, including one count of attempted extortion under color of official right, in violation of 18 U.S.C.

---

[3]In their brief, the plaintiffs represent that Turner was removed from council leadership positions on this date. Although the record contains no information about this event, its occurrence is not contested by the defendants.

§ 1951, and three counts of making false statements to Federal officials, in violation of 18 U.S.C. § 1001. A second superseding indictment dated April 7, 2009, contained identical charges against Turner.

On January 25, 2009, the council adopted rule 40A. The rule authorizes the council president to refer a matter to the council on the president's determination that a councillor "engaged in conduct unbecoming a member of the Boston City Council or may be unqualified to sit on the body," and mandates such a referral by the council president "upon a felony conviction [of a city councillor] by any state or federal court."[4] Turner voted to adopt rule 40A.

On October 29, 2010, at the conclusion of Turner's criminal trial in the District Court, the jury found him guilty on all charges then pending against him; sentencing was scheduled for January 25, 2011. On December 1, 2010, in an eleven-to-one vote, the city council voted to remove Turner, claiming that it was authorized to do so under the city charter and rule 40A. The council then scheduled a special preliminary election for February 15, 2011, and a special final election for March 15, 2011, for the purpose of filling the council seat that Turner had held.

On December 30, 2010, Turner and several constituents from the city council district that he had represented filed suit against the city, the city council, and the eleven councillors who had voted for his removal. The plaintiffs sought a declaratory judgment that the council lacked authority under State law to expel Turner from that body, that the expulsion violated their rights under the First and Fourteenth Amendments to the United States Constitution, and that rule 40A constituted an ex post facto punishment in violation of art. I, § 10, of the United States Constitution. The plaintiffs also sought damages for the alleged deprivations of their constitutional rights.

On January 10, 2011, the plaintiffs filed a motion for a preliminary injunction or, in the alternative, for summary judgment, in which they sought to enjoin the city from holding the February 15, 2011, special preliminary election and the March

---

[4]See note 8, *infra*, for the text of Rule 40A (rule 40A) of the Rules of the Boston City Council.

15, 2011, special final election. On January 25, 2011, Turner was sentenced to three years in Federal prison. As noted by the District Court judge, the parties agree that once Turner was sentenced to prison, his city council seat was vacated by operation of State law pursuant to G. L. c. 279, § 30.[5] On February 7, 2011, the District Court judge denied the plaintiffs' motion for a preliminary injunction.

Concluding that resolution of the plaintiffs' Federal claims "depend[ed] entirely" on whether the city council, in removing Turner from his office of city councillor, exceeded its authority under Massachusetts law, the District Court judge certified to this court the questions quoted at the outset.[6]

*Discussion.* The first certified question contains two separate inquiries: whether the city council had authority to promulgate rule 40A, and whether it could employ rule 40A to remove an incumbent councillor, an elected official. We consider them in order.

1. *Authority to promulgate rule 40A.* The defendants argue that the council was authorized to enact rule 40A pursuant to the city charter.[7] The city charter is "a series of State statutes and not a single code," *City Council of Boston* v. *Mayor of Boston*, 383 Mass. 716, 719 (1981), but as a charter, it "contains

---

[5]General Laws c. 279, § 30, provides:

> "If a convict sentenced by a court of the commonwealth or of the United States to imprisonment in the state prison or by a court of the United States to a federal penitentiary for a felony holds an office under the constitution or laws of the commonwealth at the time of sentence, it shall be vacated from the time of sentence. If the judgment against him is reversed upon writ of error, he shall be restored to his office with all its rights and emoluments; but, if pardoned, he shall not by reason thereof be restored, unless it is so expressly ordered by the terms of the pardon."

[6]We presume that resolution of these legal questions is relevant to the issue of damages. In the complaint, Turner has alleged, inter alia, that he suffered emotional distress and was entitled to income lost for the time period between his December 1, 2010, removal by the council and his January 25, 2011, lawful removal under G. L. c. 279, § 30.

[7]The plaintiffs do not challenge the council's authority to promulgate rule 40A, and at the oral argument of this case, they conceded that the council had authority to promulgate the rule. They focus their challenge on the council's use of the rule to remove Turner. See part 2, *infra.*

the basic provisions which establish the form, structure and organization of [Boston's] government, and the powers and duties of various officials." D.A. Randall & D.E. Franklin, Municipal Law and Practice § 2.3, at 35 (5th ed. 2006). Section 17 of the city charter expressly authorizes the city council "from time to time [to] establish rules for its proceedings." St. 1948, c. 452, § 17, as appearing in St. 1951, c. 376, § 1. Rule 40A authorizes the council president to "refer a matter to the council upon his/her determination that any member has engaged in conduct unbecoming a member of the Boston City Council or may be unqualified to sit on the body," and requires such a referral "upon a felony conviction of any [councillor] by any state or federal court." Under the terms of the rule, any action taken by the council in response to the council president's referral requires a two-thirds majority and "will be in accordance with local, state and federal law"; the rule itself does not define what actions the council might take.[8]

Rule 40A provides a means of referring matters concerning the conduct of councillors to the full city council for action. In this regard, rule 40A is similar to other procedural rules governing council proceedings and adopted by the council pursuant to § 17 of the city charter. See, e.g., rule 1 (meeting time); rule 12 (agenda); rule 23 (committee assignment and action); rule 35 (committee action); rule 36 (committee appointment, structure, and role). As a procedural directive that provides a means of referring matters to the council, rule 40A clearly falls within the

---

[8]Rule 40A provides:

"Pursuant to the city charter and in accordance with the open meeting law, the council president may refer a matter to the council upon his/her determination that any member has engaged in conduct unbecoming a member of the Boston City Council or may be unqualified to sit on the body. A member may be unqualified by violating federal or state law, or any conditions imposed by the city's charter, which includes violating any provisions of the three oaths of office.

"The council president shall automatically refer a matter to the council upon a felony conviction of any member by any state or federal court.

"Any action by the council taken in response to any referral shall require a two-thirds (2/3) majority roll call vote and will be in accordance with local, state and federal law."

scope of the rulemaking authority that the city charter vests in the council. Consequently, the council was empowered to adopt this rule.[9]

2. *Use of rule 40A to remove a councillor.* We turn to the second part of the first question, that is, whether the council could employ rule 40A to remove a councillor from that body. Historically, the rule has been that municipalities in Massachusetts have "no power to remove public officers except that which is given by the statutes." *Attorney Gen.* v. *Stratton,* 194 Mass. 51, 53 (1907). The election, removal, and replacement of public officers are "subjects of elaborate legislation," and "[i]n the absence of any . . . provision [for their removal] . . . they cannot be removed by a vote of the town, either with or without a hearing before the town or a committee thereof." *Id.* at 56. See *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1, 7 (1975) ("a municipality cannot ordinarily remove members of a board or agency established pursuant to a general law, even where there exists cause for removal, unless the general law itself explicitly or implicitly authorizes such removal").[10]

The defendants agree that rule 40A is simply a procedural

---

[9]We add this caveat, however. In concluding that the city council had authority to adopt rule 40A, we do not intend to suggest that the rule itself authorizes the council to take any particular action once a matter is referred to it by its president. As the discussion that follows in the text indicates, there are limitations on the types of action available to the council to take. In particular, that the rule authorizes referral of a matter to the council involving conduct by a councillor that in the council president's view may make the councillor "unqualified to sit on the body" does not mean that once the referral for action is made, the council necessarily is authorized to remove the councillor. See note 22, *infra,* for a discussion of possible council actions that may be appropriate.

[10]It is true that in contrast to the plaintiffs in *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1 (1975), who were members of the town's planning board established pursuant to G. L. c. 41, § 81A, Turner did not hold an office that was established under a general law but, rather, served as an elected city councillor under the terms of the city charter. However, the city charter itself consists entirely of provisions enacted by the Legislature over time in various special acts, and it currently does not contain any provision that authorizes the removal of an incumbent councillor. With respect to this last point, it should be noted that, under the city charter, the council acts as "the judge of the election and qualifications of its members." St. 1948, c. 452, § 17, as appearing in St. 1951, c. 376, § 1. Although the record indicates the defendants originally may have viewed § 17 of the city charter as a source of authority for the removal of Turner, they now appear to recognize that this

rule, and at this juncture they appear to accept that the substantive authority to remove Turner must derive from a statutory source, that is, a law enacted by the Legislature.[11] They point to the Commonwealth's conflict of interest statute, G. L. c. 268A, as that source. In particular, they argue that G. L. c. 268A, § 23 (*e*), "specifically authorized" the council to remove Turner, and that rule 40A merely supplied the procedural means of enforcing this statutory provision.[12] We turn to the specific language of this statute.

provision does not permit the city council to "exclude or expel a member for a cause which as matter of law is not a disqualification." *Caba* v. *Probate Court for the County of Hampden*, 363 Mass. 132, 136 (1973) (*Caba*), citing *Powell* v. *McCormack*, 395 U.S. 486 (1969). Nor, in any event, does § 17 appear to apply when the council is acting to remove or expel a sitting and serving councillor. See *Caba, supra.*

[11] The defendants assert in their brief that the council was authorized to promulgate and use rule 40A because of the expanded powers vested in municipalities as a result of the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, ratified in 1966. The court in *Del Duca* v. *Town Adm'r of Methuen*, 368 Mass. at 7, raised but had no reason there to answer the question whether the Home Rule Amendment may have modified the traditional rule that a city or town cannot remove a public officer, even when cause exists, unless a statute expressly or implicitly authorizes such action. There also is no reason to reach the question in this case. The Home Rule Amendment expands the independent authority of cities and towns when they are acting through "the adoption, amendment, or repeal of local ordinances or by-laws." Home Rule Amendment, art. 89, § 6. See G. L. c. 43B, § 13 (Home Rule Procedures Act). As conceded by the defendants, in removing Turner from office, the city council acted pursuant to an internal procedural rule, not an ordinance. Rule 40A is conceptually distinct from an ordinance. See *Oleksak* v. *Westfield*, 342 Mass. 50, 52 (1961) ("an ordinance is a legislative enactment of a city effective only within its own boundaries"). See also *Armitage* v. *Fisher*, 26 N.Y.S. 364, 367 (Sup. Ct. Gen. Term 1893) ("rules adopted by a legislative or municipal body cannot be deemed ordinances. Such bodies adopt rules for their guidance in making ordinances or laws. A rule is defined to be 'the regulation adopted by a deliberative body for the conduct of its proceedings.' The word 'ordinance,' as applicable to the action of a municipal corporation, should be deemed to mean the local laws passed by the governing body"). The Home Rule Amendment, therefore, is not relevant to resolution of the certified questions.

[12] In their brief, the defendants also contended that Turner's removal was mandated by G. L. c. 268A, § 2 (*b*) and (*d*), which are provisions in the statute that proscribe various corrupt acts by public officials and provide for automatic removal from office on conviction. However, at oral argument the defendants abandoned this argument. Their decision to do so was appropriate because Turner was convicted of Federal crimes; he was not convicted under G. L. c. 268A, § 2. Although the defendants continue to advance the point

General Laws c. 268A, § 23 (§ 23), establishes standards of conduct for public employees, including municipal officers and employees.[13] See § 23 (*a*) ("In addition to the other provisions of this chapter, and in supplement thereto, standards of conduct, as hereinafter set forth, are hereby established for all state, county, and municipal employees"). The specific components of the standards of conduct are detailed in § 23 (*b*) and (*c*); of particular relevance are § 23 (*b*) (2) (i) and (3) (prohibiting public officers and employees from receiving "anything of substantial value" because of their official positions, and from acting in a manner that would cause a reasonable person to believe they can be improperly influenced).[14] Section 23 (*e*) provides:

> "Where a current employee is found to have violated the provisions of [§ 23] *appropriate administrative action as is warranted may also be taken* by the appropriate constitutional officer, by the head of a state, county or municipal agency. Nothing in this section shall preclude any such constitutional officer or head of such agency from establishing and enforcing additional standards of conduct." (Emphasis added.)

that G. L. c. 268A, § 2 (*d*), did not grant Turner an affirmative right to remain in office, our inquiry focuses on whether the council had statutory authority to remove Turner from office on conviction and before sentencing, not whether Turner had an affirmative right to remain in office.

[13]As an elected city councillor, Turner was a "municipal employee" within the meaning of G. L. c. 268A and subject to its provisions. See G. L. c. 268A, § 1 (*g*) (defining "[m]unicipal employee" in relevant part as "a person performing services for or holding an office, position, employment or membership in a municipal agency, whether by election, appointment, contract of hire or engagement, whether serving with or without compensation, on a full, regular, part-time, intermittent, or consultant basis").

[14]General Laws c. 268A, § 23 (*b*) (2) (i), provides that a municipal employee shall not "solicit or receive anything of substantial value for such officer or employee, which is not otherwise authorized by statute or regulation, for or because of the officer or employee's official position"; G. L. c. 268A, § 23 (*b*) (3), provides in part that a municipal employee shall not "act in a manner which would cause a reasonable person, having knowledge of the relevant circumstances, to conclude that any person can improperly influence or unduly enjoy his favor in the performance of his official duties, or that he is likely to act or fail to act as a result of kinship, rank, position or undue influence of any party or person."

The defendants claim that, because Turner's convictions establish that he violated § 23 (*b*) (2) (i) and (3), his removal by the council was therefore authorized as an "appropriate administrative action" under § 23 (*e*).[15]

This court has held previously that the elected municipal board or council is the appropriate body to enforce the provisions of § 23 in relation to the conduct of one of its members. See *Selectmen of Avon* v. *Linder*, 352 Mass. 581, 583 (1967). See also *District Attorney for the Hampden Dist.* v. *Grucci*, 384 Mass. 525, 529 (1981). Therefore, the defendants are correct that § 23 (*e*) authorized the city council to take "appropriate administrative action" in relation to Turner if he was found to have violated the standards of conduct set forth in § 23. We also agree with the defendants that having been convicted of the Federal crime of attempted extortion, Turner may be deemed to have been "found to have violated the provisions of" § 23, and of § 23 (*b*) (2) (i) and (3) in particular (see note 14, *supra*). As we next discuss, however, we do not agree that the council's removal of Turner as an elected city councillor fits within the permissible scope of "appropriate administrative action" authorized by § 23.

The phrase "appropriate administrative action" is not defined in G. L. c. 268A. Nevertheless, the other provisions and structure of the statute indicate clearly that such "action" is distinguishable from criminal prosecution, see, e.g., G. L. c. 268A, §§ 2-5, and the types of damages and restitution that the State Ethics Commission is empowered to order a municipal employee, see G. L. c. 268A, § 21 (*b*).[16] As a source of interpretative guidance, the defendants point to the final report of the special

---

[15]In fact, the defendants assert that Turner's removal was the "only" appropriate administrative action that the city council could have taken after Turner's conviction of attempted extortion, because a failure to remove him until he was sentenced to prison arguably would have placed the city council itself in violation of G. L. c. 268A, § 23 (*b*) (3), by "giving the public the impression that members of [the council] can be improperly influenced."

[16]General Laws c. 268A, § 21 (*b*) and (*c*), authorizes the State Ethics Commission (commission), on a finding that a person has violated particular sections of c. 268A, to assess civil penalties to require the violator to make restitution to an injured third party, and to order payment of damages. Section 21 (*b*) also authorizes the commission to bring a civil action to recover damages if it determines damages exceed $25,000.

commission that was appointed pursuant to St. 1961, c. 610, § 2, to study and recommend legislation relating to conflict of interests and ethics in government.[17] The special commission, which drafted the legislation enacted as G. L. c. 268A, took the view that "appropriate administrative action" against a public employee found to have violated the standards of conduct might include discharge, and the defendants appear to rely on the view of the commission's members, as the drafters of the legislation, as an accurate reflection of legislative intent.[18] Cf. *Halebian* v. *Berv*, 457 Mass. 620, 630, 632, 633 (2010) (in construing meaning of particular provision of Massachusetts Business Corporations Act, G. L. c. 156D, court considered commentary of expert task force that drafted act); *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 330 Mass. 422, 429 (1953) (in construing meaning of particular statute, court may rely on report and recommendations of special commission on whose report statute was based).

The argument goes too far. As noted by then-Professor Robert Braucher, one of the members of the special commission (who also served on the three-member subcommittee assigned to draft the proposed legislation), although § 23 establishes a code of conduct and permits "appropriate administrative action" to be taken for violations of that code, proceedings for the suspension or removal or other discipline of municipal employees "must follow the usual procedures," meaning procedures laid out in specific statutes such as those governing, for example, civil service employees, teachers, and police. R. Braucher, Conflict of Interest in Massachusetts, in Perspectives of Law, Essays for Austin Wakeman Scott 35-36 & n.99 (R. Pound, E. Griswold, & A. Sutherland eds. 1964).

More importantly, we take from both the Massachusetts Constitution and the General Laws that the removal or suspension

---

[17]See Final Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650 (Final Report).

[18]In the Final Report, *supra* at 17, the special commission, discussing the section that now appears as § 23, stated, "This section establishes certain standards of conduct. No criminal penalties are involved, but it is expressly provided that violation of these standards may be the basis of appropriate administrative action. This may range from warning to discharge, as the case may be."

of a public officer requires specific constitutional or legislative authorization. Our Constitution specifies that "officers of the Commonwealth" may be removed from office only by compliance with its specific impeachment provisions set out in Part II, c. 1, § 2, art. 8, of the Massachusetts Constitution. See *Matter of Dugan*, 418 Mass. 185, 187 (1994).[19] "Judicial officers" may only be removed by compliance with the address provisions in Part II, c. 3, art. 1, of the Massachusetts Constitution. See *id.* at 187-188. The Legislature has directed that clerks of court and certain other court officials, as well as county commissioners, county treasurers, sheriffs, and district attorneys, be subject to removal by this court. See G. L. c. 211, § 4. In G. L. c. 279, § 30, the Legislature has mandated specifically that one who holds public office, including one who holds municipal office, is automatically removed from office only when he or she is sentenced to prison on a felony conviction in State or Federal court.

Legislative authorization also is required with respect to suspensions of public officers and employees while under indictment for criminal offenses. General Laws c. 30, § 59, sets out specific provisions and procedures that authorize and govern the suspension of an appointed or elected officer or employee of the Commonwealth or of any State agency, department, board, commission, or authority while under indictment for misconduct in office; G. L. c. 268A, § 25, similarly authorizes and prescribes specific procedures for the suspension of county and municipal officers and employees "by the appointing authority" when any such officer or employee has been indicted for misconduct in office.[20] When considered against the backdrop of these constitutional provisions and statutes, the terse and

---

[19]"[O]fficers of the Commonwealth" include "a person elected by the people at large, or holding an office provided for in the Constitution for the administration of matters of general or State concern." *Matter of Dugan*, 418 Mass. 185, 187 (1994), citing *Opinion of the Justices*, 308 Mass. 619, 623-624 (1941). As a Boston city councillor, Turner does not qualify as an "officer of the Commonwealth."

[20]This court has held that an attempt to suspend a county sheriff under indictment for alleged misconduct in office cannot stand where the suspension does not comply with the specific terms of G. L. c. 268A, § 25. In *McGonigle v. The Governor*, 418 Mass. 147, 149-150 (1994) (*McGonigle I*), we held that the Governor did not have authority to suspend a sheriff under indictment

general phrase "appropriate administrative action" in § 23 (*e*) cannot be read as a specific grant of permission to a municipal body such as the city council to remove one of its members as a sanction for violating the standards of conduct in § 23.[21]

For the above reasons, we conclude that the city charter does not provide the requisite authority for the city council's removal of Turner from office before he was sentenced to prison, and further that such authority cannot be found in G. L. c. 268A, § 23 (*e*), or any other Massachusetts statute.[22] Accordingly, we answer the first certified question, "No." There is no need to answer the second question.

The Deputy Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States District Court for the District of Massachusetts, as the answer to the questions certified, and will also transmit a copy to the parties.

---

because the Governor was not the "appointing authority" of the elected sheriff, and under c. 268A, § 25, only the appointing authority is authorized to suspend. Accordingly, the Governor's purported suspension was invalid. Contrast *The Governor* v. *McGonigle*, 418 Mass. 558, 559-560 (1994) (Supreme Judicial Court may suspend sheriff under indictment pursuant to G. L. c. 211, § 4, because authority to remove conferred by that statute includes authority to suspend).

We note that *McGonigle I* makes clear the city council could not have suspended Turner pursuant to G. L. c. 268A, § 25, while he was under indictment, because, as an elected official, Turner, like a county sheriff, had "no 'appointing authority.' " *McGonigle I*, 418 Mass. at 149-150.

[21]Turner's status as an elected municipal officer is particularly significant. His removal by the city council meant that the voters of the council district that he represented lost the councillor that they had voted into office. In a sense, the council's action served as a disavowal or restriction of their voting rights. "Restrictions on the right to vote are to be read narrowly." *Cepulonis* v. *Secretary of the Commonwealth*, 389 Mass. 930, 933 (1983), citing *Boyd* v. *Registrars of Voters of Belchertown*, 368 Mass. 631, 633 (1975).

[22]Although it did not have the power to remove Turner before he was sentenced to prison, the council was not powerless to impose sanctions on Turner or take other action under § 23 (*e*). The action taken by the city council president in 2008 to remove Turner as chairman of two council committees would qualify as one such sanction that the council itself might have imposed under rule 40A, but there are others as well, certainly including a vote of censure and perhaps restrictions on Turner's participation in the official work of the council as a body.